[No. E017825. Fourth Dist., Div. Two. Nov. 16, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
$241,600 UNITED STATES CURRENCY, Defendant;
ANTHONY ANDERSON, SR., Defendant and Appellant.

## COUNSEL

Milton C. Grimes, Brian A. S. Waite and J. Hawkins Low for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Jeffrey J. Koch, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**GAUT, J.**—Anthony Anderson, Sr. (claimant) appeals summary judgment and entry of judgment of forfeiture of $241,600 (the money), in favor of the People of the State of California (the People). Claimant contends the trial court erred in granting the People's summary judgment based on the finding claimant lacked standing to oppose the People's forfeiture action. Claimant asserts he had a legal and equitable possessory interest in the money as the finder of lost or abandoned property. Even though claimant signed waivers and disclaimers of any interest in the money, claimant contends the waivers and disclaimers were invalid because he did not do so knowingly, intelligently, and voluntarily. Claimant further contends the Blythe Police Department seized the money pursuant to an illegal detention, search, and seizure; and, therefore, the trial erred in denying claimant's motion to suppress the money and related evidence pursuant to Penal Code section 1538.5.

We conclude triable issues of material fact exist as to whether claimant had standing to oppose the People's forfeiture action and as to whether claimant "knew or should have known of facts which made the property subject to forfeiture pursuant to Section 11470 . . . ." (Health & Saf. Code, former § 11488.5, subd. (h), repealed by Stats. 1994, ch. 314, §14.)[1] Accordingly, we reverse the trial court's ruling granting summary judgment.

### 1. *Facts and Procedural Background*

Claimant and the People relied on the same evidence attached to the People's summary judgment motion, which included the declarations of Blythe Police Officers Jason Green (Green) and Patrick Streit (Streit). The following statement of facts is derived primarily from these declarations.[2]

On January 25, 1993, at 2:47 a.m., Green heard on his radio a report from the Arizona Department of Public Safety (DPS) stating that a white Cadillac had just been involved in a hit-and-run accident and was headed westbound on Interstate 10 (I-10). Shortly after this report, Green heard a second report stating a white Cadillac with major front-end damage had just passed

---

[1]Unless otherwise noted, all statutory references are to the Health and Safety Code.

[2]The same declarations were attached to the People's opposition to claimant's motion for suppression and return of property. Since the clerk's transcript and supplemental clerk's transcript do not include any of the summary judgment supporting evidence (or separate statement of disputed facts), we obtained from the trial court the supporting declarations and exhibits. The officers' declarations and waiver/disclaimer documents attached to both motions are identical and therefore for ease of reference we cite to the declarations waivers/disclaimers attached to the motion for return of property.

through the border checkpoint without stopping. The DPS requested the Blythe Police patrol to assist in locating the vehicle.

On the way to a surveillance location to watch for the vehicle, Green observed a white Cadillac, with Alabama tags and front-end damage, parked in an unlit area in front of a closed business. Green observed claimant sitting in the driver's seat talking on a cellular telephone. Green asked claimant if he had been involved in a traffic collision 11 miles east of the border, in Arizona. Claimant said, "Yes." Claimant showed Green his driver's license and a photocopy of the bill of sale for the car which listed Ruby Pace as the purchaser of the car.

Green notified the dispatcher that he had located the white Cadillac. The dispatcher told Green the car was registered to George Whitlow. When Green told claimant an Arizona DPS officer was in route to their location, claimant became very nervous and irritated and began pacing. Green explained it was necessary to wait for a DPS officer because claimant had left the scene of the collision in Arizona without waiting for the police.

While waiting, Green asked claimant various questions. Claimant told Green the accident was caused by a truck which forced him off westbound I-10, causing him to crash into a guard rail. Claimant left the scene, intending to find a telephone to call and report the accident. He drove to the present location, which was the first well-lit place he could find to call the police. When asked whom claimant was talking to when Green arrived, claimant said he was not talking to the police. When asked why he did not simply call on his cellular phone, claimant said it was difficult to use the phone in mountain areas. Green asked him why he did not pull into one of the two service stations across the street, rather than parking by an unlit closed business. Claimant said he needed to use the phone booth. Green noted he saw claimant using a cellular phone. Claimant became irritated.

Green inquired as to who Ruby Pace was, and claimant said he met "a guy" in Los Angeles who asked him to drive the car from Alabama to Los Angeles. Green could not remember the "guy's" name and did not know where in Los Angeles he was to deliver the car. Claimant said he had known the guy for only a couple days and had trusted the guy to pay him back for his airfare to Alabama. Claimant said he had an airline ticket receipt to prove this, but then said he had lost it.

Green asked claimant for consent to search the car for drugs. Claimant refused and became more nervous, continuing to pace back and forth. When Arizona DPS Officer Farmer (Farmer) arrived, Farmer also requested claimant to consent to search the car, and claimant again refused. Farmer and

Green waited for the arrival of DPS Officer Bynaker (Bynaker), who was assigned to investigate the accident. When Bynaker arrived, he spoke to claimant and completed a traffic accident investigation. Green then requested a canine officer.

Upon arrival of Canine Officer McDonald (McDonald) and his dog, McDonald and his dog walked around the car. McDonald observed aftermarket compartments under the trunk area. The dog stopped at the trunk area and began barking and scratching the trunk area. Green handcuffed claimant and asked claimant what was in the trunk. Claimant said he did not know and "Whatever it is, I have nothing to do with it." Green opened the trunk and found a briefcase. The dog began barking and scratching the briefcase violently. When asked if the briefcase was his, claimant said, "I told you, I don't know anything about that case. I don't know how it got in the trunk or who put it there. It's not mine." Claimant said he did not have a key to the briefcase, so Green opened it with a screwdriver. Inside was $241,620 in United States currency, consisting of 21 packages wrapped in green plastic and heavy-duty tape.[3] Green impounded the money.

At 4:30 a.m. that same morning, Streit was called out to the scene and, upon arrival, conducted an investigation and then drove claimant to the Blythe police station and interviewed claimant. Claimant told him he flew to Alabama and met Maurice, who asked him to drive the car to Los Angeles and deliver it to Maurice's mother. Claimant said he could not remember Maurice's telephone number and did not know Maurice's mother's address or telephone number. The Birmingham, Alabama Police Department told Streit Maurice's full name was Reginald Maurice Rash, and he was not believed to be involved in any illegal activity. Streit learned from the Jefferson County Sheriff's Office in Alabama that the car had in fact been sold to Ruby Pace, who was Maurice's mother.

Claimant told Streit he found the briefcase full of money at a rest stop off the westbound I-10, about five miles from the California border. The briefcase was in an empty rest room stall with the key lying on top of the briefcase. Claimant opened the briefcase, saw money in it, and took the briefcase to his car. About two miles from the rest stop, he was forced off the road by a pickup truck. Claimant could not explain why he then drove to Blythe without stopping and said that, when he was contacted by Green, he was using his cellular phone to report the accident and call his employer.

[3]We note a slight discrepancy in the stated amount of United States currency seized. Green stated in his declaration attached to the People's opposition to the motion for return of property that he counted the money in the briefcase and it totaled $241,620. The police report also states the money seized amounted to $241,620. However, the notice of seizure and intended forfeiture states the amount seized was $241,600.

Claimant told Streit the money was not his, and he could not explain why a narcotics dog had "hit" on the money. Claimant then signed a disclaimer form as to any interest in the money. Claimant signed another disclaimer form and a waiver form on October 27, 1993.

On February 4, 1993, claimant filed a claim opposing forfeiture, and on September 28, 1993, and October 13, 1993, the People filed a complaint and amended complaint for forfeiture of the $241,600 found in claimant's car. By letter dated December 28, 1993, to the Riverside District Attorney, claimant stated that he was withdrawing his disclaimers because he had not knowingly and voluntarily signed them.

Claimant filed a motion to suppress and return the money pursuant to former section 11488.4 and Penal Code section 1538.5 on September 29, 1994. The trial court denied the motion on the basis of a lack of evidence of standing. Claimant filed a petition for writ of mandate seeking return of the money, which was summarily denied. The People then filed a motion for summary judgment, which the trial court granted on the grounds (1) claimant did not have standing to oppose forfeiture, and (2) the evidence established probable cause that the money was possessed, acquired, used, and intended for use as a result of drug transactions.

## 2. *Triable Issue as to Standing*

Claimant contends he has standing to seek return of the money because he has an interest in the money even though he signed disclaimers and waivers of his right to the money. Claimant argues the waivers and disclaimers do not defeat his standing because they were not knowingly, intelligently, and voluntarily made.

Standing is a threshold legal issue in proceedings initiated under the California forfeiture statutes. (*People* v. *$28,500 United States Currency* (1996) 51 Cal.App.4th 447, 467 [59 Cal.Rptr.2d 239].) The claimant bears the burden of establishing a legally cognizable interest in the subject property sufficient to confer on him standing to challenge the government's forfeiture action. (*Ibid.*) "Under both the federal and state systems, a claimant must show he has a recognizable legal or equitable interest in the seized property in order to establish standing. [Citations.] Standing has been

recognized where the potential claimant has a bona fide ownership, possessory, or security interest in the property seized." (*Ibid.*)

Former section 11488.4, subdivision (g)(1),[4] provided that "a claimant, who alleges standing based on an interest in the property which arose prior to the seizure or filing of the complaint for forfeiture, whichever occurs first, may move the court for the return of the property named in the claim on the grounds that there is not probable cause to believe that the property is subject to forfeiture pursuant to Section 11470, . . . ."

Section 11470, subdivision (h), provides that all right, title, and interest in moneys exchanged for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate the manufacture, sale, possession for sale of a controlled substance, shall vest in the state "upon commission of the act giving rise to forfeiture . . . ." (§ 11470, subd. (h).) ▮ Under this provision (special vesting rule), in the instant case the right to the money vested in the state when the alleged drug trafficking offense occurred, before claimant found the money.

However, subdivision (h) of section 11470 further provided that the special vesting rule "shall be limited to circumstances where its application will not defeat the claim of any person, . . . which interest arose prior to the seizure or the filing of the complaint for forfeiture pursuant to this chapter, · whichever occurs first, notwithstanding that the interest in the property being claimed was acquired from a person whose property interest would otherwise have been subject to divestment pursuant to this subdivision." Here, pursuant to this provision, if claimant acquired an interest in the money prior to the People's seizure of the money, the special vesting rule would not apply.

Claimant asserts he acquired an interest in the property before it was seized by virtue of finding the money in a rest room. Civil Code section 2080.3 provides that, if the property amounts to $250 or more and no one proves ownership of the property within 90 days, the police or sheriff's department shall cause notice of the property to be published in newspaper,

---

[4]This case is subject to the civil narcotics forfeiture statutes in effect in 1993. All citations to the Health and Safety Code are to the 1993 version. A new forfeiture law took effect on August 14, 1994. It provides: "In the case of any property seized or forfeiture proceeding initiated before January 1, 1994, the proceeding to forfeit the property and the distribution of any forfeited property shall be subject to the provisions of this chapter in effect on December 31, 1993, as if those sections had not been repealed, replaced, or amended." (Stats. 1994, ch. 314, § 22.)

and, if after 7 days following published notice, no one proves ownership, title to the property shall vest in the person who found the property upon the finder's payment of the publication costs. Civil Code section 2080.7 provides that Civil Code section 2080.3 and the other related provisions regarding lost money and goods are inapplicable if the money or property has been intentionally abandoned by the owner.

Here, it is undisputed that claimant found the money in a rest room before the People seized it, that the owner of the money is unknown, and that no one has proved ownership of the money. Although the police did not publish notice of lost property 90 days after claimant found the money, there is evidence indicating this did not occur because claimant signed disclaimers and waivers of interest in the property. Sergeant Robert Whitney states in his declaration attached to the People's summary judgment motion that, when claimant signed the October 1993 disclaimer, claimant stated he did not want anything to do with the money.[5]

On appeal, the People argue that, even though claimant may have found the money, the trial court correctly concluded claimant lacked standing to contest the forfeiture because claimant executed written waivers and disclaimers and orally disavowed any interest in the money. ▮ "The term 'waiver' means the intentional relinquishment or abandonment of a known right." (*Bickel* v. *City of Piedmont* (1997) 16 Cal.4th 1040, 1048 [68 Cal.Rptr.2d 758, 946 P.2d 427].) "To constitute a waiver, there must be an existing right, knowledge of the right, and an actual intention to relinquish the right. [Citation.] 'The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right.' [Citation.]" (*Id.*, at p. 1053.) " ' "Waiver always rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts." [Citations.] The burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver." ' [Citation.]" (*Grubb & Ellis Co.* v. *Bello* (1993) 19 Cal.App.4th 231, 236 [23 Cal.Rptr.2d 281].) "Whether there has been a waiver is a question of fact." (*Bickel* v. *City of Piedmont, supra,* 16 Cal.4th at p. 1052.)

▮ A disclaimer is defined as " 'a denial of the insistence upon any claim or right in the thing demanded, and a renunciation of all claim thereto;

---

[5]We note that, although the Blythe Police Department did not cause to be published notice of lost property pursuant to Civil Code section 2080.3, it did publish notice of seizure of the property in the newspaper in February 1993, pursuant to former section 11488.4.

a denial of right or title, although not necessarily a denial of prior possession; an admission upon the record of plaintiff's right, and a denial of assertion of title on the part of defendant.' (26 C.J.S. 1331; 18 C.J. 1049 and cases cited.)" (*Axe v. County of Los Angeles* (1950) 98 Cal.App.2d 578, 581 [220 P.2d 781].)

■ In order to waive or disclaim a right or interest, the person must do so knowingly, intelligently, and voluntarily. Claimant asserts in his opposition to the People's motion for summary judgment that he signed the waiver and disclaimer forms because he was coerced and was unaware he had an interest in the money as the finder of the money. Evidence raising a triable issue of fact as to whether claimant knowingly, intelligently, and voluntarily signed the waivers and disclaimers includes the following evidence attached to the People's motion for summary judgment: Green and Streit's declarations state claimant said the money was not his, he found it, and he did not know where it came from or who was the owner; claimant's January 25, 1993, disclaimer states he had no interest in or claim for the money and that he did not know how the money came to be at the rest stop: "I don't know. I found the briefcase . . ."; claimant's claim opposing forfeiture of the money, filed in propria persona on February 4, 1993, opposed the People's forfeiture claim based upon a "possessory" interest in the money; and claimant's letter dated December 28, 1993, to the Riverside District Attorney states claimant was withdrawing his disclaimers because he signed them due to police harassment and intimidation and because he was ignorant of his rights to the money. He claimed the officers indicated he would be criminally prosecuted if he did not sign the disclaimers.

We conclude this evidence is sufficient to raise a triable issue of fact as to whether claimant knowingly, intelligently, and voluntarily waived and disclaimed his interest in the money, as the finder of lost or abandoned property. In turn, a triable issue exists as to whether claimant had an interest in the money and standing to oppose its forfeiture.

### 3. *Exclusionary Rule*

We next consider whether, even though there is a triable issue as to standing, there is some other basis for granting summary judgment in favor of the People. The People argue that, even if claimant has standing, the trial court's ruling granting summary judgment was proper because the money was subject to forfeiture because it was possessed, acquired, used, and intended for use as a result of drug transactions. This, of course, assumes the money was admissible. Claimant argues the money was illegally seized

during a prolonged detention and unlawful search and therefore should have been suppressed under the exclusionary rule. ▇ The People argue the exclusionary rule is inapplicable to this forfeiture action.

▇ The exclusionary rule, which generally excludes illegally seized evidence, is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect. (*United States* v. *Janis* (1976) 428 U.S. 433, 446 [96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046].) The primary purpose of the rule is to deter future unlawful police conduct. (*Id.,* at pp. 456-457, fn. 34 [96 S.Ct. at p. 3033].) As a remedial device, rather than as a personal constitutional right, the rule " 'has been restricted to those areas where its remedial objectives are thought most efficaciously served.' " (*Id.,* at p. 447 [96 S.Ct. at p. 3028].) "[T]he Court never has applied it to exclude evidence from a civil proceeding, federal or state." (*Ibid.* [96 S.Ct. at p. 3029], fn. omitted; *I.N.S.* v. *Lopez-Mendoza* (1984) 468 U.S. 1032, 1042 [104 S.Ct. 3479, 3485, 82 L.Ed.2d 778].) The *Janis* court acknowledged that, in the civil forfeiture action in *Plymouth Sedan* v. *Pennsylvania* (1965) 380 U.S. 693 [85 S.Ct. 1246, 14 L.Ed.2d 170] (*Plymouth*), the court applied the exclusionary rule, but noted that the *Plymouth* court expressly relied on the fact that the forfeiture proceeding was in actuality a criminal proceeding.

In *Plymouth,* law enforcement officers of the Pennsylvania Liquor Control Board stopped and illegally searched the claimant's vehicle, arrested him for unlawfully transporting liquor, and seized the liquor and vehicle. The United States Supreme Court in *Plymouth* held that evidence seized in the course of an illegal automobile search could not be used in a proceeding for forfeiture of the automobile. Although the *Plymouth* court acknowledged the case was technically a civil forfeiture proceeding (*Plymouth, supra,* 380 U.S. at p. 697 [85 S.Ct. at pp. 1248-1249]), it concluded that in substance and effect it was a criminal proceeding because it was brought under a statutory provision which affixed penalties to criminal acts. The provision imposed upon the offender a monetary fine or imprisonment, as well as forfeiture of the merchandise illegally transported. (*Ibid.*) The court reasoned that "[i]t would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible." (*Id.,* at p. 701 [85 S.Ct. at p. 1251], fn. omitted.)

▇ Here, unlike in *Plymouth,* the forfeiture action is an in rem civil proceeding which is not based on a provision requiring the claimant to be found guilty of a criminal offense nor imposing imprisonment as a penalty

for a criminal act. This forfeiture action was brought under section 11488.4, which allowed forfeiture of an innocent owner's property upon the People meeting its burden of proving by a preponderance of the evidence that the innocent third party "knew or should have known of facts which made the property subject to forfeiture pursuant to Section 11470 . . . ." (Former § 11488.5, subds. (h) and (i), both provisions repealed by Stats. 1994, ch. 314, § 14.) Such provision is not penal in nature.

In *Janis*, which involved a civil claim for a tax refund, the police seized $4,940 and wagering records. The respondent was arrested for bookmaking activity, and the IRS assessed the respondent for wagering excise taxes and levied upon the respondent $4,940 in partial satisfaction. The respondent filed a civil action in the federal district court for return of the $4,940. The United States Supreme Court held that the exclusionary rule was inapplicable in the *Janis* civil action since the likelihood of deterring law enforcement conduct by exclusion of the illegally procured evidence was not sufficient to outweigh the societal costs imposed by the exclusion of such evidence. (*United States* v. *Janis, supra,* 428 U.S. at p. 454 [96 S.Ct. at p. 3032].)

The *Janis* court reasoned that "[i]n evaluating the need for a deterrent sanction, one must first identify those who are to be deterred. In this case it is the state officer who is the primary object of the sanction. It is his conduct that is to be controlled. Two factors suggest that a sanction in addition to those that presently exist is unnecessary. First, the local law enforcement official is already 'punished' by the exclusion of the evidence in the state criminal trial. That, necessarily, is of substantial concern to him. Second, the evidence is also excludable in the federal criminal trial, [citation], so that the entire criminal enforcement process, which is the concern and duty of these officers, is frustrated." (*United States* v. *Janis, supra,* 428 U.S. at p. 448 [96 S.Ct. at p. 3029], fns. omitted.) The *Janis* court did not reach the question of whether or not the exclusionary rule applied in a civil proceeding involving an intrasovereign violation, such as occurred in the present case.

This issue was decided in *Baltimore* v. *1995 Corvette* (1998) 119 Md.App. 691 [706 A.2d 43], in which police officers stopped a vehicle, believing the driver had just engaged in a drug transaction. The officers searched the car and found 535 grams of cocaine. The car was seized and the driver arrested. The court in *Corvette* ultimately held that the exclusionary rule did not apply in a civil in rem narcotics forfeiture proceeding. (*Id.,* at p. 101.) While we recognize the *Corvette* decision is not binding on this court, its in-depth analysis provides persuasive support for not applying the exclusionary rule

in the instant case, particularly since the applicable Maryland forfeiture provision (Md. Ann. Code of 1957, art. 27, § 97) is in many respects similar to the civil forfeiture provisions applicable in the instant case.

Here, assuming without deciding the officers illegally seized the briefcase full of money, the local law enforcement officials would be "punished" by the exclusion of the evidence in the state criminal trial. We conclude such punishment is adequate deterrence. The likelihood of achieving additional deterrence by excluding illegally seized evidence in a civil forfeiture proceeding is not sufficient to outweigh the societal costs imposed by the exclusion. (*United States* v. *Janis, supra*, 428 U.S. at pp. 453-454 [96 S.Ct. at pp. 3031-3032].) The societal costs include inadmissibility of relevant, probative evidence. " 'As it serves this function [of deterring Fourth Amendment violations by law enforcement officers], the [exclusionary] rule is a needed, but grud[g]ingly taken, medicament; no[] more should be swallowed than is needed to combat the disease. Granted that so many criminals must go free as will deter the constables from blundering, pursuance of this policy of liberation beyond the confines of necessity inflicts gratuitous harm on the public interest as declared by Congress.' Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U.Pa.L.Rev. 378, 388-389 (1964) (footnotes omitted)." (*Janis, supra*, at p. 454, fn. 29 [96 S.Ct. at p. 3032].) We conclude application of the exclusionary rule in civil forfeiture actions is unnecessary and of little additional benefit, particularly when the property is owned by a third party claimant who has not been convicted of any offense. To date the United States Supreme Court has rejected application of the exclusionary rule to civil cases, and we decline to do so as well in this civil forfeiture case.

## 4. *Triable Issue as to Knowledge of Use of Money*

Having concluded that the seized briefcase containing $241,600 is not subject to suppression under the exclusionary rule, we next address the issue of whether it is undisputed that the money is subject to forfeiture.

"Forfeiture shall be ordered when, at the conclusion of the hearing, the People have shown by a preponderance of the evidence that: (1) the property is subject to forfeiture pursuant to section 11470; and (2) the person claiming an interest in the seized property knew or should have known of facts which made the property subject to forfeiture under section 11470. (§§ 11488.4, subd. (i), 11488.5, subds. (f), (h).) 'If the court or jury does not make these findings, the court shall order that the person's interest in the property be returned.' (§ 11488.5, subd. (h).)" (*People* v. *$28,500 United States Currency, supra*, 51 Cal.App.4th 447, 463.)

 In order to conclude as a matter of law that the money was subject to forfeiture, the trial court was required to find that it was undisputed that claimant "knew or should have known of facts which made the property subject to forfeiture pursuant to Section 11470 . . . ." (Former § 11488.5, subd. (h).) According to the People's complaint and amended complaint for forfeiture, the money was subject to forfeiture under section 11470 on the basis it was "possessed, acquired, used and intended for use as a result of and for the purpose of drug transactions."

We conclude a triable issue of fact exists as to whether claimant knew or should have known the money was possessed, acquired, used and intended for use as a result of and for the purpose of drug transactions. The declaration of Green states claimant said the briefcase was not claimant's and he did not know anything about it. The declaration of Streit states claimant told Streit he found the briefcase in a rest room at a rest stop, opened it, saw money inside it, closed the briefcase and put the briefcase in his car. Claimant further stated the money was not his, and, when Streit asked him if he could explain why a narcotics dog had "hit" on the money, claimant said he could not. Claimant's disclaimers dated January 25, 1993, and October 27, 1993, state claimant did not know how the money came to be at the rest stop rest room and that he did not know who the owner of the money was. Claimant's answer to interrogatory No. 15.1 also says that he found the money and that its intended purpose was unknown to him.

This evidence raises a triable issue of fact as to whether claimant knew or should have known the money was drug money. The evidence of facts within claimant's knowledge when he found the money is insufficient to establish as a matter of law that he knew or should have known the money was drug related. The money could have been involved in some illicit matter other than drug trafficking, and there is no evidence that claimant counted the money and knew the amount of money contained in the briefcase, particularly since the money was wrapped in plastic (although, no doubt, one would presume a briefcase full of money would amount to a large sum). The only fact directly linking the money in some way to drugs was the canine "hit," which occurred after claimant found the money and Green had detained claimant. Under such circumstances, a triable issue exists as to whether claimant knew or should have known the money was drug related, and, in turn, there is a triable issue as to whether the money was subject to forfeiture.

### 5. *Disposition*

The judgment is reversed. Appellant to recover costs.

Hollenhorst, Acting P. J., and Richli, J., concurred.