[No. F032022. Fifth Dist. June 7, 1999.]

JORGE GALINDO JAUREGI, Petitioner, v.
THE SUPERIOR COURT OF MADERA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

COUNSEL

Robert A. Forkner for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Louis M. Vasquez and Lloyd G. Carter, Deputy Attorneys General, for Real Party in Interest.

OPINION

**DIBIASO, J.**—In this civil forfeiture proceeding, petitioner Jorge Galindo Jauregi seeks a writ of mandate directing the Madera County Superior Court to vacate its order denying Jauregi standing to challenge the forfeiture of cash in the amount of $20,040 allegedly connected with drug trafficking (Health & Saf. Code, § 11470) and to enter a new order sanctioning his verified claim opposing such forfeiture. We hold in part that the provisions of the Evidence Code pertaining to hearsay evidence (Evid. Code, § 1200 et seq.) apply in proceedings under Health and Safety Code section 11488.4, subdivision (g).[1] For this and other reasons, we deny the petition.

FACTS

*The Vehicle Stop*

Law enforcement officers seized the $20,040 (the money) at issue here from the clothing of the occupants of a 1994 Saturn automobile. On December 2, 1997, Officer Sigler of the California Highway Patrol (CHP) stopped the driver of the Saturn for a violation of Vehicle Code section 21703— following another vehicle too closely. Deputy Spino of the Madera County Sheriff's Department (the department) observed the stop and pulled over at the scene. The driver of the Saturn, Cisneros/Escamilla, did not possess a valid driver's license (a violation of Veh. Code, § 12500, subd. (a)); neither did his passenger, Bravo. Each man disclaimed ownership of the vehicle, and explained they were transporting the car to Modesto for an acquaintance of Escamilla's. After determining the Saturn had not been reported stolen, Sigler decided to impound the vehicle (Veh. Code, § 22651, subd. (p)). He

---

[1]All further statutory references are to the Health and Safety Code unless otherwise indicated.

cited Escamilla for various violations (Veh. Code, §§ 21703, 12500, subd. (a)) and obtained written consent from each occupant to search the Saturn.[2]

Spino planned to take the occupants to the nearest telephone. Before transporting them, he conducted a patdown search of the men for weapons. The frisk produced large bundles of United States currency in both men's pants pockets ($500 on Bravo; $2,560 on Escamilla). Doerak, a CHP drug-detecting canine, thereafter entered the passenger compartment of the Saturn and alerted to a jacket on the rear of the driver's seat.[3] Sigler saw a large bundle of money protruding from one of the pockets of the jacket. Spino removed the jacket and discovered additional cash in the other pocket (for a total of $16,980 in the jacket).[4] A further search of the vehicle disclosed a cellular phone in the center console but no obvious contraband.

The officers transported Escamilla and Bravo to the Madera County Narcotic Enforcement Team (MCNET) office for further discussion about the origin of the money. Escamilla maintained that none of the cash belonged to him; he was delivering the money to Modesto for a man he knew only as "Enano." According to Escamilla, Enano had contacted him and asked him to transport the money; Enano allowed Escamilla to drive Enano's Saturn and use a cellular telephone to make contact through a paging number with an individual in Modesto to whom Escamilla was to give the money. While at the MCNET office, Escamilla and Bravo signed forms disclaiming any interest in the money, the cell phone and the car. Ultimately, both were arrested and booked for violation of section 11370.9 (possession of proceeds over $25,000 derived from controlled substance offenses), among other charges (e.g., Escamilla was also arrested for violation of Vehicle Code section 10851). Neither was ever prosecuted on any of the charges.

*The Forfeiture Action*

On or about January 20, 1998, Jauregi appeared at the department and made a claim to the car and the cash. He signed a department-issued form stating the money was his. The department personally served Jauregi with notice of nonjudicial forfeiture of the money on February 5, 1998, when

---

[2]Sigler's attention was drawn to several active air fresheners hanging from the steering column of the vehicle.

[3]Doerak's alert was later confirmed by the department's drug-detecting canine, Maxx.

[4]The $20,040 found in the vehicle consisted of 32 50-dollar bills, 897 20-dollar bills, and 50 10-dollar bills.

Jauregi appeared to claim the Saturn.[5] Jauregi filed a verified claim opposing forfeiture on March 6, 1998, and the People filed a petition for forfeiture of the money on March 17, 1998. Prior to the hearing, the People filed a motion to compel Jauregi to prove his standing to contest the forfeiture in advance of a trial on the merits of the People's petition.

*The Hearing to Determine Standing*

When the court calendared the hearing on standing, it stated it anticipated the hearing would be "handled as a law and motion matter with proof by way of declaration, as opposed to oral evidence." Counsel for Jauregi stated he was going to "include the police reports" for the court to read, which counsel felt would be sufficient to establish standing. The People did not comment.

Though subpoenaed, Jauregi did not attend the hearing. His counsel apparently did not submit declarations and instead said he wanted to call two witnesses, the department's Barker and Benard. Before the first of these witnesses testified, the prosecutor disclosed his intention to object to "the bulk of the [officer's] testimony" as hearsay. It was the prosecutor's position that Jauregi, as the claimant, had the burden to demonstrate standing and anything the officers had to say would be hearsay. Jauregi's counsel countered that the officers' testimony, even if hearsay, would be admissible because this was a "preliminary matter." Presumably counsel intended to refer to Penal Code section 872, subdivision (b), although he never expressly said so or mentioned this statute.[6]

Under the People's continuing hearsay objection, Barker testified that, when Jauregi came to the department to attempt to recover the car and the money, he had with him a registration certificate (pink slip) in his name, his driver's license, and proof of insurance on the car. Jauregi told Barker he had been in Los Angeles when he learned a family member in Mexico was ill. Jauregi said he did not want to take the money with him to Mexico so he gave the money to a man whose name he did not know to hold for him until

---

[5]Department Lieutenant Benard testified at the hearing on standing that the department did not pursue forfeiture of the automobile because the outstanding debt against the car probably gave it a net value which did not meet the statutory minimum for forfeiture.

[6]Penal Code section 872, subdivision (b) states: "Notwithstanding Section 1200 of the Evidence Code, the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."

he returned.[7] Barker also testified that Jauregi said the money came from the sale of his interest in a jewelry store in Modesto and produced a business card showing he was the owner of La Michoacana Jewelers in Modesto. Barker further testified that Jauregi gave her a document of sale, dated June 14, 1997, conveying his half interest in the jewelry store to one Manuel Gil. The sale price was $30,000, with $5,000 down, installments of $5,000 per month, and final payment due on or before November 15, 1997.[8]

Jauregi had signed a department-generated form in which he claimed the money was his.[9] Barker initially said this was done in her presence; she later testified she did not know if she in fact was present.

Barker acknowledged she had provided the verified responses to the interrogatories propounded by Jauregi, but she testified she was unaware anything had been attached to the responses, even though they referred repeatedly to "attached" reports. When Jauregi's counsel attempted to have the interrogatory answers admitted, the prosecutor objected on the ground they were not made admissible by the fact that they had been provided by the government in discovery. The court received the interrogatory answers and associated documents and deferred ruling on the admissibility of any aspect of the packet until the prosecutor's hearsay objection was resolved upon the completion of testimony.

Over the People's renewed hearsay objection, Benard testified he spoke briefly to Jauregi on January 20, 1998; Jauregi was then in the company of Santiago Ramirez, who was the registered owner of the cellular phone seized from the Saturn. Ramirez told Benard that Jauregi left his automobile and the $20,000 with him in Los Angeles when Jauregi went to attend to a family emergency in Mexico. Later, Ramirez received a telephone call from Jauregi who asked Ramirez to turn the car and money over to an individual who would transport the items to Modesto. Ramirez allowed the driver to take his cell phone so he could contact the real estate broker in Modesto slated to receive delivery of the car and money.

Following the testimony of Barker and Benard, counsel for Jauregi argued he had established his client's standing. Counsel maintained the testimony of the two officers established Jauregi's cognizable interest in the money sufficient to oppose the forfeiture, in the same manner as the hearsay

---

[7] It is not clear from the record, but it appears Jauregi had more than one explanation for what transpired.

[8] Jauregi apparently declined Barker's January 20th request to produce income tax returns confirming the jewelry store ownership or sale.

[9] The form entitled "Renuncia de Posesion de Dinero" was not admitted as a business record; the court ruled there was no proper foundation.

testimony of a qualified police officer is sufficient to establish probable cause at a preliminary hearing in a criminal action.[10] Counsel asserted that the discovery documents referred to during the hearing were admissible under the business record exception to the hearsay rule and also on the theory that the "documents . . . speak for themselves." The People took the position that there was no admissible evidence establishing Jauregi's standing.

Much discussion between court and counsel followed, including references to *United States* v. *1982 Yukon Delta Houseboat* (9th Cir. 1985) 774 F.2d 1432, 1434, a federal case which dealt with probable cause determinations in forfeiture proceedings under federal law. At one point, the court noted that the arguably pertinent language of former section 11488.4, subdivision (g)(1) concerning probable cause, discussed in this court's opinion in *People* v. *$28,500 United States Currency* (1996) 51 Cal.App.4th 447, 462-463 [59 Cal.Rptr.2d 239], had been deleted from the statute in 1994. The court pointed out that the new language of the statute stated simply that the person moving for return of the property must show standing by proving "an interest" in the property. (§ 11488.4, subd. (g).)[11]

The court ultimately concluded that Jauregi had failed to establish he had standing because all of the evidence he relied upon was inadmissible hearsay. Counsel for Jauregi then represented he could have Jauregi present in court to testify later in the day, at 1:00 p.m., and requested he be allowed to reopen at that time. Citing the facts that Jauregi did not respond to the prosecutor's subpoena, and that if he had appeared and testified his testimony would have sufficed to establish standing, the court refused to continue the hearing to the afternoon.

DISCUSSION

I.

A.

■    Forfeiture proceedings are statutory civil in rem actions in which property is considered the defendant, on the fiction that the property itself is

---

[10]Both Benard and Barker were qualified to offer hearsay testimony at a preliminary hearing pursuant to the provisions of Proposition 115 (Pen. Code, § 872, subd. (b)).

[11]The removed language read: " 'No sooner than 10 days after a complaint is filed pursuant to this section, a claimant, who alleges standing based on an interest in the property which arose prior to the seizure or the filing of the complaint for forfeiture, whichever occurs first, may move the court for the return of the property named in the claim on the grounds that there is not probable cause to believe that the property is subject to forfeiture pursuant to Section 11470.' (§ 11488.4, subd. (g)(1).) In order to counter this claim, the prosecution must show that such probable cause exists." (*People* v. *$28,500 United States Currency, supra,* 51 Cal.App.4th at p. 462.)

the guilty party. (*People* v. *$28,500 United States Currency, supra,* 51 Cal.App.4th at pp. 462-463; *People* v. *One 1953 Buick* (1962) 57 Cal.2d 358, 365 [19 Cal.Rptr. 488, 369 P.2d 16]; *U.S.* v. *$38,000 in U.S. Currency* (11th Cir. 1987) 816 F.2d 1538, 1544, fn. 12, disagreed with on another point in *U.S.* v. *Approximately 2,538.85 Shares of Stock* (1st Cir. 1993) 988 F.2d 1281, 1285 [of Stock Certificates of Ponce Leones Baseball Club, Inc.].) Three general principles are relevant to the application of California's civil forfeiture statutes:

"First, the provisions of the Code of Civil Procedure are applicable to the proceedings in chapter 8 regarding the seizure and disposition of property subject to forfeiture unless otherwise inconsistent with the provisions or procedures in that chapter. [Now § 11488.5, subd. (c)(3).]

"Two, federal case law is instructive in the area of forfeiture because the California forfeiture statute is patterned after the federal drug forfeiture statute. (Cf. Health & Safety Code, § 11470 et seq. with 21 U.S.C. § 881.)

"Three, in construing these statutes, it must be remembered that '[s]tatutes imposing forfeitures are not favored and are to be strictly construed in favor of the persons against whom they are sought to be imposed.' [Citations.]" (*People* v. *$28,500 United States Currency, supra,* 51 Cal.App.4th at pp. 463-464.)

■ Section 11488.4, subdivision (g), addresses standing under the current, relevant version of California's forfeiture law; it reads as follows: "Nothing contained in this chapter shall preclude a person, other than a defendant, claiming an interest in property actually seized from moving for a return of property if that person can show standing by proving an interest in the property not assigned subsequent to the seizure or filing of the forfeiture petition."

The doctrine of standing seeks to insure that courts decide actual controversies and not abstract questions. Absent standing, the claimant in a forfeiture action cannot contest the government's decision to seek forfeiture; this is the rule in state and federal proceedings. (*People* v. *$28,500 United States Currency, supra,* 51 Cal.App.4th at p. 467 [involving a former version of section 11488.4].) If it were otherwise, " 'persons with no interest whatsoever in seized property could make a handsome living filing claims.' " (*U.S.* v. *Certain Real Prop. Located at 16510 Ashton* (6th Cir. 1995) 47 F.3d 1465, 1473 (dis. opn. of Boggs, J.).) Thus, "a claimant [in a civil forfeiture proceeding] must show he has a recognizable legal or equitable interest in the seized property" in order to establish standing; it is the claimant's burden

to establish an "interest in the seized property" sufficient to satisfy the court of his standing to contest forfeiture. (*People* v. *$28,500 United States Currency*, *supra*, 51 Cal.App.4th at p. 467.) This is a threshold legal issue. (*Id.* at pp. 466-467; *People* v. *$241,600 United States Currency* (1998) 67 Cal.App.4th 1100, 1107-1108 [79 Cal.Rptr.2d 588]; § 11488.4, subd. (g).)[12]

### B.

■ Jauregi contends the trial court erred in refusing to admit the testimony of the two officers as proof of Jauregi's standing to contest the forfeiture of the money. Jauregi takes the position that hearsay is admissible to establish what he classifies as the "predicate" issue of standing. He compares the concept of standing to the concept of probable cause discussed in the federal forfeiture cases and he analogizes proof of standing with proof of probable cause at preliminary hearings in criminal cases under Penal Code section 872, subdivision (b).

We conclude hearsay is not admissible, over a proper objection, to prove standing under section 11488.4, subdivision (g). Nothing in this statute, and nothing we can find elsewhere in California's forfeiture law, deals with the nature of the evidence that may be admitted on the issue of standing. This silence means that hearsay may not be used for such a purpose. Evidence Code section 300, not mentioned by either party, reads in relevant part that "Except as otherwise provided by statute, this code applies in every action before . . . a . . . superior court, . . . ."[13] If this command were not clear enough, the Law Revision Commission Comment to section 300 resolves any conceivable ambiguity in the statutory language; the Commission states that section 300 "makes the Evidence Code applicable to all proceedings conducted by California courts except those court proceedings to which it is made inapplicable by statute. . . ." (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) foll. § 300, p. 46.) The case law is equally explicit: "Evidence Code section 300 makes it clear that, except as otherwise provided by statute, the Evidence Code applies to every evidentiary hearing in the state courts. . . ." (*Hewitt* v. *Superior Court* (1970) 5 Cal.App.3d 923, 927 [85 Cal.Rptr. 493]; see also *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1074 [2 Cal.Rptr.2d 160, 820 P.2d 262].)

---

[12]The parties do not address whether the claimant's standing must be tried by a jury unless the right is waived. We therefore do not consider the point. For the same reason, we do not consider any other issue related to the procedure employed by the trial court in hearing and deciding the prosecutor's motion.

[13]A " '[c]ivil' " action includes "civil proceedings." (Evid. Code, § 120.)

The filing of a petition for forfeiture obviously initiates a civil "action [or proceeding] before . . . a . . . superior court." (Evid. Code, §§ 300, 120.) The aspect of a forfeiture action which requires a claimant to "show" standing by "proving" an interest in the property in issue obviously requires an evidentiary hearing. (§ 11488.4, subd. (g).) Accordingly, because no statute exists which exempts such an evidentiary hearing from the application of the Evidence Code, all Evidence Code provisions which deal with hearsay apply to the proof (or disproof) of standing under section 11488.4, subdivision (g).

We have not found any case law on point. At the trial court level in *$28,500,* the People maintained that hearsay evidence could support a "probable cause" finding under an earlier version of section 11488.4, subdivision (g); the claimant asserted that declarations could only be considered if the information contained in them was within the affiant's personal knowledge. (*People* v. *$28,500 United States Currency, supra,* 51 Cal.App.4th at pp. 452, 458.) The lower court apparently took into account some or all of the following: the declarations of law enforcement officers involved (*id.* at p. 452); the declarations of the claimant in which he stated that he loaned the money (proceeds from the claimant's restaurant business) to the driver of the vehicle in which money was found (*id.* at pp. 455-456, 460); and the testimony of the driver and the claimant at the probable cause hearing (*id.* at p. 456). On appeal, this court did not decide whether the hearsay was properly admitted to show probable cause; we simply noted that the trial court did not resolve the issue. (*Id.* at p. 458.)

*People* v. *$241,600 United States Currency, supra,* 67 Cal.App.4th 1100, is also not germane. The case was decided under the forfeiture statutes in effect in 1993, the same version of the law evaluated by this court in *$28,500.* (*Id.* at p. 1108, fn. 4.) The claimant alleged he had found the money sought to be forfeited in a briefcase in a rest room before law enforcement (with the help of a narcotics dog) seized it from the trunk of the claimant's vehicle. The claimant asserted that, as a finder of lost or abandoned property, he had the necessary legal or equitable interest in the money to establish standing. The prosecution brought a motion for summary judgment which the trial court granted, in part because the trial court concluded the evidence established that the claimant did not have standing to contest the forfeiture. (*Id.* at p. 1107.) The trial court found the claimant had "executed written waivers and disclaimers and orally disavowed any interest in the money." (*Id.* at p. 1109.)

The Court of Appeal reversed. It held in part that the evidence before the trial court established the presence of a triable issue of fact about whether the claimant knowingly, intelligently and voluntarily signed the waivers and

disclaimers. (67 Cal.App.4th at p. 1110.) In finding a triable issue of fact with respect to standing, the appellate court relied on the declarations of the officers involved in the seizure, the claimant's subsequent claim opposing forfeiture in which he asserted a " 'possessory' " interest in the money as the finder of lost or abandoned property, and the claimant's letter to the district attorney withdrawing his disclaimers on the ground he signed them under what amounted to duress. (*Ibid.*)

Although it is not clear that all the evidence mentioned by the Court of Appeal met Evidence Code standards, we will not read the case as permitting the admission of hearsay or other normally inadmissible evidence to establish standing. The court in *People* v. *$241,600 United States Currency, supra,* 67 Cal.App.4th 1100 did not review a decision following an evidentiary hearing or trial on the matter of standing; it instead evaluated a granted motion for summary judgment.[14] There is no indication in the court's opinion that any issue was raised in the trial court or on appeal about the admissibility of the evidence cited by the court, and we will therefore assume that all objections, if any, to the admissibility of that evidence had been waived by the opposing party. (Code Civ. Proc., § 437c, subd. (d).)

## C.

We disagree with Jauregi that preliminary hearings in criminal cases provide analogous authority for his position. The fact that sworn hearsay testimony of law enforcement officers possessing certain qualifications is admissible to establish probable cause at a preliminary examination in a criminal matter does not support application of a comparable rule with respect to proof of standing in a forfeiture proceeding. The described hearsay evidence is admissible in a criminal preliminary hearing precisely because Penal Code section 872, subdivision (b), a part of Proposition 115, is a statute of the sort referred to in Evidence Code section 300; that is, one which makes a provision of the Evidence Code (specifically, § 1200) inapplicable to a specific proceeding. (See *Whitman* v. *Superior Court, supra,* 54

---

[14]A motion for summary judgment raises only the question whether an issue exists which requires resolution by a trier of fact; in ruling on such a motion the trial court is not authorized to resolve any disputed issue of fact in favor of one party or the other. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].). Code of Civil Procedure section 437c provides an exception to the Evidence Code to the extent the statute allows the parties to rely upon evidence presented by way of declaration or other means that might not be permitted at trial before the trier of fact. (Code Civ. Proc., § 437c, subd. (b); see 1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 831, p. 790.) Except for this authorized departure from the Evidence Code, however, section 437c does not suspend any other rule of admissibility. (See *Hayman* v. *Block* (1986) 176 Cal.App.3d 629, 638-639 [222 Cal.Rptr. 293].)

Cal.3d at p. 1074.) If the exception did not exist, section 1200 would apply to criminal preliminary hearings. (54 Cal.3d at p. 1074. [Because Pen. Code, § 872, subd. (b) mentions only Evid. Code, § 1200, Evid. Code, § 1201 (multiple hearsay)' applies to preliminary hearings].)

Nor are we persuaded to Jauregi's position by the federal precedents permitting federal prosecutors to use hearsay to prove probable cause for forfeiture. (See *U.S.* v. *$150,000 in Currency* (E.D.Va. 1988) 686 F.Supp. 133, 134.)[15] In this situation, California law, in the form of Evidence Code section 300, furnishes the unambiguous rule by which we are constrained to decide the issue before us. We see no reason to ignore the application of this statute simply because both probable cause in the federal arena and standing in the state arena have been said to be "predicate" (*U.S.* v. *$150,000 in Currency, supra,* 686 F.Supp. at p. 132) or "threshold" (*People* v. *$241,600 United States Currency, supra,* 67 Cal.App.4th at p. 1107) determinations. Moreover, apparently unlike federal law, under California's forfeiture law a claimant who is not a defendant in an "underlying or related criminal action" is not authorized to move for return of seized property on the ground there is not probable cause to believe the property is forfeitable. (§ 11488.4, subd. (h).)[16]

---

[15]In a federal proceeding, the United States must show as an initial matter that there is probable cause to believe property is subject to forfeiture. The burden of proof then shifts to the claimant to prove that the property is not forfeitable. (*U.S.* v. *One Single Family Residence* (11th Cir. 1991) 933 F.2d 976, 979.) Probable cause may be proved by hearsay found to be reliable in light of the "aggregate of the facts." In determining reliability, the court may consider factors such as the source of the evidence and whether it is consistent with other evidence. (*U.S.* v. *One Parcel of Real Property* (D.Or. 1991) 780 F.Supp. 715, 723 [two of three DEA (Drug Enforcement Agency) agent affidavits, substance of DEA reports of interviews with one of the claimants and other involved parties all "remarkably consistent" and admissible despite hearsay component]; *U.S.* v. *Eight Firearms* (S.D.W.Va. 1995) 881 F.Supp. 1074, 1077-1079 [police affidavits admitted]; *U.S.* v. *7715 Betsy Bruce Lane Summerfield, N.C.* (4th Cir. 1990) 906 F.2d 110, 113 [court erred in excluding hearsay evidence of allegedly "coerced" testimony, police affidavits and bank records].)

[16]We do not decide whether hearsay may be relied upon for purposes of subdivision (h) of section 11488.4, which provides generally that a defendant may move in "an underlying or related criminal action" for the return of seized property "on the grounds that there is not probable cause to believe that the property" is subject to forfeiture. This provision was put into the statute in 1994, contemporaneously with the repeal of what was then section 11488.4, subdivision (g)(1). (Stats. 1994, ch. 314, §§ 11, 12, eff. Aug. 19, 1994; see *People* v. *$28,500 United States Currency, supra,* 51 Cal.App.4th at pp. 462-463.) Former subdivision (g)(1) entitled a "claimant," who "allege[d] standing" based upon an interest in the property, to move, within a particular time frame, for return of the seized property on the ground there was not probable cause to believe the property was subject to forfeiture. Also eliminated by the 1994 amendments was the portion of former section 11488.4, subdivision (g)(1), which required the prosecution to defend against a claimant's motion for return by showing, on the basis of "evidence, prior judicial testimony, deposition, affidavit, or declaration," that

## D.

Last, requiring the claimant to prove standing by admissible evidence is supported by logic in light of the statutory scheme. Under section 11488.5, subdivision (e), the disputed property must be returned to the holder of an interest in it if the trier of fact does not find the property to have been put to a forfeitable use or does not find that the holder of the interest knew of and consented to the property's forfeitable use. Requiring proof by admissible evidence of a claimant's right to the property assures to some extent that such property will not be released to a person whose claim is spurious or contrived. A legitimate claimant can be expected to have access to the evidence necessary to establish his or her professed rights in the property. Finally, whether property is forfeitable is subject to determination by a jury unless jury trial is waived, and the prosecutor bears the enhanced burdens of proof of clear and convincing evidence and beyond a reasonable doubt. (§ 11488.4, subd. (i)(2) & (i)(4).) One who claims property sought to be declared forfeit should be compelled to establish his or her interest by admissible evidence before expenditure of time and expense on the merits of the forfeiture.

We are satisfied our opinion does not do violence to any of the three general principles relevant to the interpretation and application of this state's civil forfeiture statutes. Nothing we have said raises an inconsistency between the forfeiture law and the Code of Civil Procedure. (§ 11488.5, subd. (c)(3).) Moreover, the unambiguous rule of Evidence Code section 300 must take precedence over the merely "instructive" (*People* v. *$28,500 United States Currency, supra*, 51 Cal.App.4th at p. 463) federal cases which address a concept, "probable cause," that is not relevant under subdivision (g) of section 11488.4. Finally, the notion that forfeiture statutes must be " 'strictly construed in favor of the persons against whom they are sought to be imposed' " (*People* v. *$28,500 United States Currency, supra*, 51 Cal.App.4th at p. 463) does not require the construction of a statute in a manner contrary to its clear language (see *People* v. *Gardeley* (1996) 14 Cal.4th 605, 622 [59 Cal.Rptr.2d 356, 927 P.2d 713] [rule of lenity does not apply where statute is not ambiguous), and, in any event, section 300 of the Evidence Code is not a part of the forfeiture law.

## II., III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

probable cause existed. (Former § 11488.4, subd. (g)(1); see Stats. 1994, *ante*.) There is nothing in the current forfeiture law to suggest the Legislature intended this provision to remain operative under the present version of section 11488.4.

 *See footnote, *ante*, page 931.

## DISPOSITION

The petition for writ of mandate is denied. The stay of the trial court proceeding imposed by this court on January 29, 1999, is vacated.

Stone (W. A.), Acting P. J., and Levy, J., concurred.