[No. B152449. Second Dist., Div. Three. Oct. 31, 2002.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MARIA PLASCENCIA, Real Party in Interest.

**COUNSEL**

Steve Cooley, District Attorney, George M. Palmer, Head Deputy District Attorney, and Fred Klink, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Philip A. DeMassa for Real Party in Interest.

**OPINION**

**ALDRICH, J.**—Petitioners the People of the State of California seek a writ of mandate directing the Los Angeles County Superior Court to (1) set aside its ruling that claimant and real party in interest Maria Plascencia has established standing to challenge the forfeiture of $68,317 seized by the

government as the proceeds of drug dealing; and (2) to make factual findings on the question of Plascencia's ownership of the money. The People's petition raises the issue of how a claimant's standing, i.e., his or her legally cognizable interest in seized property, should be litigated in forfeiture proceedings brought pursuant to California's civil forfeiture laws, Health and Safety Code section 11469 et seq.[1] We conclude that the question of standing is one of law, and is properly determined by the trial court when the material facts underlying the standing inquiry are undisputed. However, when the determination of standing is intertwined with the merits of the forfeiture proceeding and turns upon factual disputes or witness credibility evaluations, we hold that the jury must determine the underlying facts, unless the claimant waives his or her right to a jury. Otherwise, a claimant's statutory and constitutional right to a jury trial in a forfeiture proceeding would be meaningless. The claimant, however, bears the threshold burden of proving, by a preponderance of the evidence, his or her legally cognizable interest in the seized property at the forfeiture hearing, before the People are required to prove the merits of the forfeiture action. Because the determination of Plascencia's ownership of the seized currency requires the resolution of disputed facts and evaluations of witness credibility, a jury must make the factual findings underlying the trial court's ultimate determination of whether Plascencia has standing to challenge the forfeiture. Therefore, we deny the People's petition for writ of mandate.

FACTUAL AND PROCEDURAL BACKGROUND[2]

a.  *1997 search of Plascencia's son's residence and seizure of cash.*

In July 1996, police were informed that claimant Plascencia's son, Martin Velasquez, was distributing large quantities of cocaine from his residence located at 3641 West El Segundo Boulevard in Hawthorne. On January 15, 1997, police searched Velasquez's residence, along with another residence located at 3717 West 126th Street which they believed to be connected to Velasquez's drug dealing. At the El Segundo Boulevard address, police found Velasquez asleep in a bedroom. Inside the box spring upon which Velasquez had been lying,[3] police discovered seven bundles of United States currency, secured with rubber bands. The currency had been placed in two rows along the interior edges of the box spring's frame. Small amounts of

---

[1]All further undesignated statutory references are to the Health and Safety Code.

[2]Our recitation of the facts is taken from our prior unpublished opinion in *People v. $68,317 United States Currency* (May 24, 2000, B122554), and from the evidence presented at the evidentiary hearing conducted below.

[3]The witnesses sometimes referred to the area of the bed in which the money was found as a mattress; at other times, they referred to it as a box spring. Photographs clarify that the money was found in a box spring. Accordingly, for ease of reference, we will hereinafter refer

cash were also found in a nightstand and dresser in the same room. The total amount of cash discovered in the bedroom was $68,317. At the 126th Street address, police discovered eight kilograms of cocaine and approximately 70 grams of a substance that appeared to be tar heroin. Several persons, including Velasquez, were charged with and ultimately convicted of offenses related to narcotics trafficking.

b.  *Institution of forfeiture proceedings.*

On February 20, 1997, the People filed in superior court a petition for forfeiture of the $68,317, pursuant to section 11470 et seq. On March 21, 1997, Plascencia filed a claim opposing forfeiture pursuant to section 11488.5. As was her right, Plascencia demanded a jury.

In January 1998, Plascencia filed a motion for summary judgment, which was denied. The trial court found triable issues of material fact existed regarding whether the seized money belonged to Plascencia and whether she maintained a residence at the El Segundo Boulevard house where the money was recovered. At the same time it heard Plascencia's summary judgment motion, the trial court heard and denied the People's motion to strike Plascencia's claim to the seized currency on the ground she lacked standing to contest the forfeiture.[4] On March 13, 1998, the trial court, on its own motion, reconsidered and granted the People's motion to strike Plascencia's claim for lack of standing. In an April 9, 1998 judgment, the trial court found that the seized money was forfeitable and ordered it distributed pursuant to section 11489.

c.  *Prior appeal.*

Plascencia appealed, contending, inter alia, that the trial court had erred by granting the People's motion to strike. In an unpublished opinion, we reversed and remanded. (*People v. $68,317 United States Currency, supra,* B122554.) We concluded that the trial court's original ruling denying the motion to strike was correct, because resolution of the question of standing turned upon disputed issues of material fact. Therefore, the "trier of fact [would] have to decide," at an evidentiary hearing, whether the money belonged to Plascencia. We declined to decide whether the standing issue had to be tried by a jury, because the parties had not addressed the question.

to the area of the bed where the money was found as a box spring regardless of the nomenclature used by the witnesses.

[4] The trial court also heard the People's and Plascencia's motions to compel discovery. As those motions and their ultimate resolution below and in an earlier appeal are not at issue here, we omit discussion of them.

d. *Subsequent evidentiary hearing.*

On remand, the People noticed a "hearing to compel claimant to prove standing to contest forfeiture." At an evidentiary hearing held before the court sitting without a jury, officers testified regarding the discovery of the cash. The People presented photographs, authenticated by one of the searching officers, showing that the cash was bound into seven bundles and neatly lined up in straight rows on opposite sides of the box spring when it was discovered. Various documents in the names of Velasquez and another defendant, Carmen Diaz, were found in the bedroom.[5] A property tax bill bearing Plascencia's name, addressed to 3837 West 119th Street in Hawthorne, was found in the kitchen. Other tax bills bearing Plascencia's name were discovered in a kitchen drawer. According to one of the officers, large-scale narcotics traffickers typically do not store money and drugs together, but instead use multiple storage locations to minimize their losses in case they are apprehended. Narcotics traffickers often put property in the name of relatives or friends in order to avoid its seizure. The officer opined that the cash in the box spring represented the proceeds from narcotics trafficking.

Plascencia testified that the money found in the box spring at the El Segundo Boulevard residence belonged to her. For approximately one year prior to the search, she had lived at the El Segundo Boulevard residence with Velasquez. Plascencia had also lived with her boyfriend at a residence at 3837 119th Place in Hawthorne. She kept clothing at both residences, but most of her clothing, as well as her cosmetics, money, and other items, were kept at the El Segundo Boulevard residence. Plascencia's daughter, Angelica Estrada, confirmed her mother's testimony. Plascencia had been in Tijuana when the search of the El Segundo Boulevard residence occurred.

Plascencia had formerly owned two bars, one named Planque, the other El Habito. In 1992, she sold the Planque to Mauro Duran, the pastor of the Primera Iglesia Christiana Church, for $450,000.[6] Estrada confirmed that Duran had had the property remodeled for use as a church. Duran paid Plascencia approximately $50,000 as a cash down payment in March 1992, and thereafter made monthly cash payments of $1818.14, using bills of varying denominations. Either Estrada or Plascencia personally collected the monthly cash payment. Plascencia identified documents as a copy of an escrow statement evidencing the sale and receipts evidencing the monthly payments from Duran. Plascencia had saved approximately $80,000 from her business endeavors.

---

[5]Diaz was also convicted of narcotics violations.

[6]Duran testified to the sale at Velasquez's criminal trial. He did not testify at the evidentiary hearing held in connection with the forfeiture action.

After receiving the cash, Plascencia would count it, bundle it with a rubber band, and place it into the box spring. She would push the money through a slash in the fabric, tilting or shaking the box spring so the money would fall to the edges. She did not sort the bills into denominations; they were all "mixed." Estrada had seen her mother count the monthly payments and had, on a few occasions, seen Plascencia place cash into the box spring.

When Plascencia needed money, she would reach inside the box spring, take the amount she needed, and replace the rest. Although she periodically counted the cash, she did not keep written records. She never put money in a bank, believing it was safe in the box spring. She explained, "Me and that [box spring] were together for more than 20 years because it was my bank."

Plascencia told Velasquez about the money in the box spring. She trusted Velasquez although she knew he had been previously convicted of possession of drugs for sale.

e. *The trial court's ruling and the petition for writ of mandate.*

On August 2, 2001, after the evidentiary hearing, the trial court found Plascencia had established a prima facie case of standing sufficient to entitle her to a jury hearing on the question of forfeiture. The court stated, "My determination is that [Plascencia] has made out a prima facie case of standing by competent evidence . . . [a]nd I do not now make a determination concerning credibility. I make only a determination that [Plascencia] has supplied enough evidence to entitle her to go to trial on the matter. [¶] The record reflects that there has been a jury demand. She is entitled to a jury trial on the matter. [¶] The jury will be empowered to rule on matters of credibility if the case actually is tried to a jury."

The People filed a petition seeking a writ of mandate requiring the trial court to set aside its August 2, 2001 ruling and make factual findings, including credibility determinations, on the question of whether Plascencia had established, by a preponderance of the evidence, that she owned the cash in question. We granted a stay of the proceedings in order to review the People's petition, issued an order to show cause, and ordered further briefing on the issues.

## CONTENTIONS

The People contend that a third party's standing (i.e., his or her legally cognizable interest in the seized property) to challenge a forfeiture is a threshold issue that must be determined by the trial court, acting as the trier

of fact, before the claimant is entitled to a jury hearing on the forfeiture. Here, because the question of Plascencia's ownership of the money turned on disputed facts and credibility determinations, they contend the trial court erred by refusing to consider the credibility of the witnesses. Instead, the People assert, the trial court erroneously used the standard applicable to summary judgment motions. They also assert that our prior opinion contemplated the trial court would make such factual findings, and therefore is the law of the case.

Plascencia, on the other hand, urges that the trial court correctly found she had established a prima facie case that she owned the money, sufficient to entitle her to a jury hearing on the issue of forfeiture. She asserts that she is entitled to a jury finding on the question of ownership of the money and posits that a trial court ruling on the question of standing must use the standard applicable to summary judgment motions. Because Plascencia presented competent evidence that, if believed by a jury, would have established her ownership of the money, she raised a triable issue of material fact and thus met her burden to prove standing.

## DISCUSSION

### 1. Overview of California civil drug forfeiture laws.

██ A forfeiture proceeding is a civil in rem action in which property is considered the defendant, on the fiction that the property is the guilty party. (*Jauregi v. Superior Court* (1999) 72 Cal.App.4th 931, 937-938 [85 Cal.Rptr.2d 553]; *People v. $28,500 United States Currency* (1996) 51 Cal.App.4th 447, 462 [59 Cal.Rptr.2d 239].) Statutes imposing forfeitures are disfavored and are to be " 'strictly construed in favor of the persons against whom they are sought to be imposed.' [Citation.]" (*People v. $28,500 United States Currency, supra,* 51 Cal.App.4th at p. 463.)

A claimant has both a statutory and a California constitutional right to a jury trial on civil in rem forfeiture proceedings. (§ 11488.5, subd. (c)(2); Cal. Const., art. I, § 16; *People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 300 [231 P.2d 832] (hereinafter *Chevrolet Coupe*).

"California's drug asset forfeiture law has undergone numerous revisions since its enactment in 1972." (*Mundy v. Superior Court* (1995) 31 Cal.App.4th 1396, 1400 [37 Cal.Rptr.2d 568]; *People v. Nazem* (1996) 51 Cal.App.4th 1225, 1231 [59 Cal.Rptr.2d 794] [noting that California's statutory forfeiture scheme "has had a long and confusing history."].) The current law, section 11469 et seq., as amended effective 1994, sets forth a comprehensive scheme governing forfeitures of controlled substances, property,

cash, and other things of value used in connection with the trade in controlled substances. As pertinent here, the statutory scheme provides that currency is subject to forfeiture if it is furnished or intended to be furnished in exchange for a controlled substance, traceable to such an exchange, or used or intended to be used to facilitate trafficking in, or the manufacture of, various controlled substances. (§ 11470, subd. (f).) Property subject to forfeiture may be seized by a peace officer if there is probable cause to believe the property was used for the specified illicit purposes. (§ 11471, subd. (d).)

If the appropriate governmental agency determines, based upon the facts, that property valued over $25,000 is forfeitable, the Attorney General or district attorney (hereinafter the government) must file a petition of forfeiture in the superior court, within specified time limits, and must comply with various service and notice requirements. (§ 11488.4, subds. (a), (c), (d), (e), (f), (j).)

Once a verified claim is filed, the claimant is entitled to a hearing by jury, at which the provisions of the Code of Civil Procedure generally apply. (§ 11488.5, subds. (a), (c)(2) & (3).) To obtain forfeiture, the government must show at the hearing that: "the owner of any interest in the seized property consented to the use of the property with knowledge that it would be or was used for a purpose for which forfeiture is permitted," (§ 11488.5, subd. (d)(1)), and the property was so used (§ 11488.5, subd. (e)). If the seized property is cash over $25,000, the government must prove these elements by clear and convincing evidence.[7] (§ 11488.4, subd. (i)(4).) The government must prove a "nexus between the seized funds and a narcotics transaction. [Citation.]" (*People v. $47,050* (1993) 17 Cal.App.4th 1319, 1323 [22 Cal.Rptr.2d 32], fn. omitted.) There is no requirement that a criminal conviction have been obtained in the underlying or related case. (§ 11488.4, subd. (i)(4).)

2. *Standing.*

The chapter's only provision explicitly dealing with the requirement of standing is section 11488.4, subdivision (g). That section states, "Nothing contained in this chapter shall preclude a person, other than a defendant, claiming an interest in property actually seized from moving for a return of property if that person can show standing by proving an interest in the property not assigned subsequent to the seizure or filing of the forfeiture petition."

---

[7]The applicable standard of proof varies depending upon the type of property seized. (§ 11488.4, subd. (i).)

Also indirectly relevant to the meaning of subdivision (g) is section 11488.5, subdivisions (a)(2) and (e). Subdivision (a)(2) provides, in pertinent part: "Any person who claims that the property was assigned to him or to her prior to the seizure or notification of pending forfeiture of the property under this chapter, whichever occurs first, shall file a claim with the court and prosecuting agency pursuant to Section 11488.5 declaring an interest in that property *and that interest shall be adjudicated at the forfeiture hearing.*" (Italics added.)

Subdivision (e) provides, in pertinent part, "Unless the court or jury finds that the seized property was used for a purpose for which forfeiture is permitted, the court shall order the seized property *released to the person it determines is entitled thereto.* [¶] If the court or jury finds that the seized property was used for a purpose for which forfeiture is permitted, but does not find that a person claiming an interest therein, *to which the court has determined he or she is entitled,* had actual knowledge that the seized property would be or was used for a purpose for which forfeiture is permitted and consented to that use, the court shall order the seized property released to the claimant." (§ 11488.5, subd. (e), italics added.)

■ Standing is typically treated as a threshold issue, in that without it no justiciable controversy exists. "As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury . . ." (*Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 314-315 [109 Cal.Rptr.2d 154].) "Without standing, there is no actual or justiciable controversy, and courts will not entertain such cases." (*Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747, 751 [45 Cal.Rptr.2d 333]; *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438 [261 Cal.Rptr. 574, 777 P.2d 610] [contentions based on lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding]; *McKinny v. Board of Trustees* (1982) 31 Cal.3d 79, 90 [181 Cal.Rptr. 549, 642 P.2d 460].) "The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor." (*Common Cause v. Board of Supervisors, supra,* 49 Cal.3d at p. 439.) Typically, the issue of standing is decided by reference to the allegations made in a party's complaint. (*Clifford S. v. Superior Court, supra,* 38 Cal.App.4th at p. 751.)

■ A claimant in a civil forfeiture proceeding " 'must show he [or she] has a recognizable legal or equitable interest in the seized property' in order to establish standing; it is the claimant's burden to establish an 'interest in

the seized property' sufficient to satisfy the court of his standing to contest forfeiture." (*Jauregi v. Superior Court, supra,* 72 Cal.App.4th at pp. 938-939.)

California and federal courts considering the drug forfeiture laws have reiterated that standing is a "threshold legal issue." (*Jauregi v. Superior Court, supra,* 72 Cal.App.4th at p. 939; *People v. $28,500 United States Currency, supra,* 51 Cal.App.4th at pp. 466-467; *People v. $241,600 United States Currency* (1998) 67 Cal.App.4th 1100, 1107-1108 [79 Cal.Rptr.2d 588]; *U.S. v. $9,041,598.68* (5th Cir. 1998) 163 F.3d 238, 245 [167 A.L.R. Fed. 781] ["[t]he issue of standing is one of law"].) "Absent standing, the claimant in a forfeiture action cannot contest the government's decision to seek forfeiture; this is the rule in state and federal proceedings." (*Jauregi v. Superior Court, supra,* 72 Cal.App.4th at p. 938; *People v. $28,500 United States Currency, supra,* 51 Cal.App.4th at p. 467.)

California appellate decisions to date have not addressed the precise question before us. In *Jauregi v. Superior Court, supra,* 72 Cal.App.4th 931, the People filed "a motion to compel [the claimant] to prove his standing to contest the forfeiture in advance of a trial on the merits . . ." (*Jauregi v. Superior Court, supra,* 72 Cal.App.4th at p. 935.) At the subsequent "hearing on standing," which the trial court indicated would be " 'handled as a law and motion matter with proof by way of declaration, as opposed to oral evidence' " (*ibid.*), the claimant failed to present admissible evidence establishing a legally cognizable interest in the seized cash and, as a result, the trial court found the claimant had failed to establish standing. The appellate court concluded that the provisions of the Evidence Code pertaining to hearsay evidence applied to proceedings under section 11488.4, subdivision (g), and a claimant must prove standing through admissible evidence. (*Jauregi,* at pp. 933, 939, 943.) *Jauregi* reasoned that "[t]he aspect of a forfeiture action which requires a claimant to 'show' standing by 'proving' an interest in the property in issue obviously requires an evidentiary hearing." (*Id.* at p. 940.) However, *Jauregi* expressly declined to address whether "the claimant's standing must be tried by a jury unless the right is waived," and did not consider "any other issue related to the procedure employed by the trial court in hearing and deciding the prosecutor's motion." (*Id.* at p. 939, fn. 12.)

Other cases have held that summary judgment was proper on the issue of standing where the undisputed facts showed the claimant had no legally cognizable interest in the seized property (*People v. $28,500 United States Currency, supra,* 51 Cal.App.4th at pp. 469-470), and that summary judgment on the issue of standing was improper where triable issues of fact

existed regarding whether the claimant had a legally cognizable interest in the seized property. (*People v. $241,600 United States Currency, supra*, 67 Cal.App.4th at pp. 1104, 1110.) These authorities, therefore, did not address the issue before us, whether a claimant's standing should be tried to the court or a jury.

### 3. *Section 11488.4, subdivision (g), does not mandate that the trial court resolve factual issues underlying the question of standing.*

■ When interpreting a statute, " 'our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]' " (*People v. Acosta* (2002) 29 Cal.4th 105, 112 [124 Cal.Rptr.2d 435, 52 P.3d 624]; *People v. $31,500 United States Currency* (1995) 32 Cal.App.4th 1442, 1459 [38 Cal.Rptr.2d 836].) If possible, " ' "significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.]' " (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) Where the "legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; 'no resort to extrinsic aids is necessary or proper.' [Citation.]" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

Where the statutory language is susceptible to more than one reasonable interpretation, however, we look to extrinsic aids, including the objects of the legislation, public policy, and the statutory scheme of which the statute is a part. (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519 [106 Cal.Rptr.2d 548, 22 P.3d 324]; *Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].) We do not consider the particular clause or section in isolation, but instead examine it in the context of the statutory framework as a whole, keeping in mind the scope and purpose of the provision and harmonizing it with the statutory scheme. (*People v. Acosta, supra*, 29 Cal.4th at p. 112; *DuBois v. Workers' Comp. Appeals Bd., supra*, 5 Cal.4th at p. 388.)

■ Here, the plain language of subdivision (g)—that a claimant can move for return of property "if that person can show standing by proving an interest in the property"—imposes upon the claimant the burden of proving a sufficient legal or equitable interest in the seized property. (§ 11488.4, subd. (g); *Jauregi v. Superior Court, supra*, 72 Cal.App.4th at pp. 938-939;

*People v. $28,500 United States Currency, supra,* 51 Cal.App.4th at p. 467.)[8] Such a requirement is logical: "Requiring proof by admissible evidence of a claimant's right to the property assures to some extent that such property will not be released to a person whose claim is spurious or contrived." (*Jauregi v. Superior Court, supra,* 72 Cal.App.4th at p. 943.)

■ We also find it clear that section 11488.4, subdivision (g) requires that a claimant prove a legally cognizable interest by a preponderance of the evidence. Evidence Code section 115 provides, "[t]he burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. [¶] Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." Here, the Legislature did not specify a different burden of proof. Because no other standard was specified in subdivision (g), we are obliged to conclude that, pursuant to Evidence Code section 115, the preponderance of the evidence standard applies.

We also agree with the People that the question of standing should be resolved as a threshold determination. As noted, California and federal courts have uniformly held that, in forfeiture proceedings, the question of a

---

[8]Section 11488.4, subdivision (g) refers to a claimant's "moving for a return of property." This language arguably could be construed to apply only to motions to return seized property, a procedurally distinct step from the adjudication of the forfeiture at a forfeiture hearing. (See *People v. $28,500 United States Currency, supra,* 51 Cal.App.4th at p. 451 [claimant filed both a claim to seized cash and made a "motion pursuant to [former] section 11488.4, subdivision (g)(1) seeking the return of his property following a determination that there was no probable cause to support the forfeiture"]; *People v. $241,600 United States Currency, supra,* 67 Cal.App.4th at p. 1107 [claimant filed motion to suppress and return seized money pursuant to former § 11488.4 and Pen. Code, § 1538.5, as well as a claim opposing forfeiture].) However, the parties do not argue that subdivision (g) applies only to motions to return and we do not believe it should be read so narrowly. *Jauregi v. Superior Court, supra,* 72 Cal.App.4th at page 942, explained that under the pre-1994 version of the forfeiture law, a claimant who was not a defendant in an underlying or related criminal action could move for return of property on the ground there was not probable cause to believe the property was subject to forfeiture. (*Id.* at p. 942, fn. 16 [citing former § 11488.4, subd. (g)(1)].) The 1994 amendments to the statute, however, eliminated the portion of subdivision (g) that allowed such a motion by a third party claimant; now only a defendant may move for return of the property on the ground there was no probable cause to seize it. (See § 11488.4, subd. (h); *Jauregi v. Superior Court, supra,* 72 Cal.App.4th at p. 943 & fn. 16.) Therefore, subdivision (g) must refer to the forfeiture proceeding itself, or it would be superfluous. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 95 [124 Cal.Rptr.2d 530, 52 P.3d 703] [we must avoid construing a statute in a manner that would create surplusage].) Instead, we think subdivision (g)'s "moving for a return" language is simply shorthand to refer to the entire forfeiture proceeding. (Cf. *People v. Superior Court (Rishwain, Hakeem & Ellis)* (1989) 215 Cal.App.3d 1411, 1414 [264 Cal.Rptr. 28] [describing forfeiture action as "an action for return of property"].)

claimant's standing is a threshold issue. (E.g., *Jauregi v. Superior Court, supra,* 72 Cal.App.4th at pp. 938-939; *People v. $28,500 United States Currency, supra,* 51 Cal.App.4th at p. 467; *People v. $241,600 United States Currency, supra,* 67 Cal.App.4th at p. 1107; *U.S. v. Cambio Exacto, S.A.* (2d Cir. 1999) 166 F.3d 522, 526; *U.S. v. $38,570 U.S. Currency* (5th Cir. 1992) 950 F.2d 1108, 1111; *U.S. v. Real Property Known as 22249 Dolorosa St.* (9th Cir. 1999) 167 F.3d 509, 511.) "One who claims property sought to be declared forfeit should be compelled to establish his or her interest by admissible evidence before expenditure of time and expense on the merits of the forfeiture." (*Jauregi v. Superior Court, supra,* 72 Cal.App.4th at p. 943; 1 Smith, Prosecution and Defense of Forfeiture Cases, ¶ 9.04 [2][b], p. 9-70.8, fn. 15 (Smith) [where the government challenges a claimant's standing in a timely manner the issue should logically be decided at the outset rather than at the end of the forfeiture proceeding].)

Beyond these basic principles, however, the statutory scheme is not a model of clarity in regard to the procedural mechanisms by which the claimant is to prove standing, including the questions of whether, when the facts underlying the standing determination are controverted, the court or the jury is to decide disputed factual issues. Moreover, it does not inexorably flow from the fact that standing is a threshold legal question that the People may, by simply filing a motion purporting to require that the claimant prove his or her standing, require the court and the claimant to engage in a full-blown evidentiary hearing prior to the forfeiture hearing.

■ We conclude that standing is a threshold question of law for the trial court where the matter can be determined on the undisputed facts. Where, however, the determination of a claimant's standing to challenge the government's forfeiture turns on disputed facts or credibility determinations, and the issue of the claimant's ownership and the merits of the forfeiture action are inextricably intertwined, the jury must make factual findings on the issue of the claimant's ownership or interest in the seized property before the trial court decides whether the facts, as determined by the jury, confer standing as a matter of law. (Cf. *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 877 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*).) We further hold that section 11488.4, subdivision (g) requires that the claimant must prove his or her standing by showing a legally cognizable interest in the property by a preponderance of the evidence, before the government is put to its burden of proof.

Our conclusion rests upon several principles. Standing to challenge a forfeiture is a question of law (*Jauregi v. Superior Court, supra,* 72 Cal.App.4th at p. 939; *U.S. v. $9,041,598.68, supra,* 163 F.3d at p. 245; *U.S.*

*v. $191,910.00 in U.S. Currency* (9th Cir. 1994) 16 F.3d 1051, 1057 fn. 10), and " ' "involve[s] jurisdictional challenges." ' " (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361 [87 Cal.Rptr.2d 654, 981 P.2d 499]; *Common Cause v. Board of Supervisors, supra,* 49 Cal.3d at p. 438.) Questions of law are to be tried by the court, while questions of fact are to be decided by the jury. (See Code Civ. Proc., § 591 [issues of law must be tried by the court]; Code Civ. Proc., § 592 [issues of fact must be tried by the jury unless right to jury trial is waived]; Evid. Code, § 310 [all questions of law, and the determination of issues of fact preliminary to the admission of evidence, are to be decided by the court]; Evid. Code, § 312 [all questions of fact are to be decided by the jury]; *Martin v. Hall* (1971) 20 Cal.App.3d 414, 421 [97 Cal.Rptr. 730, 53 A.L.R.3d 719] [it is error to submit to the jury a question of law]; *Monterey v. Del Monte Dunes at Monterey, Ltd.* (1999) 526 U.S. 687, 720 [119 S.Ct. 1624, 1643, 143 L.Ed.2d 882] ["In actions at law predominantly factual issues are in most cases allocated to the jury."]; *Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1001 [62 Cal.Rptr.2d 164] ["Under all but the most limited circumstances, credibility of witnesses is a question of fact to be resolved by the jury"]; see generally Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2001) ¶¶ 2:37 to 2:57, pp. 2-8 to 2-10].)

Not infrequently, the trial court is charged with resolving disputed issues of fact that underlie its resolution of a legal issue. (E.g., *People v. Betts* (2002) 102 Cal.App.4th 922 [126 Cal.Rptr.2d 64] [noting split of authority among states regarding whether disputed jurisdictional facts must be tried by the jury, and adopting minority view that resolution of controverted facts underlying court's subject matter jurisdiction is a question for the court]; *Khawar v. Globe Internat., Inc.* (1998) 19 Cal.4th 254, 264 [79 Cal.Rptr.2d 178, 965 P.2d 696] [whether plaintiff in defamation action is a public figure is question of law for trial court; trial court's resolution of disputed factual questions bearing on the public figure determination is reviewed for substantial evidence]; *Windsor Square Homeowners Assn. v. Citation Homes* (1997) 54 Cal.App.4th 547, 557 [62 Cal.Rptr.2d 818] [facts underlying the applicability of the res judicata defense are tried to the court, not a jury]; Evid. Code, §§ 402, 405 [trial court decides foundational and preliminary fact issues affecting the admissibility of evidence].)

However, in some instances the jury determines the facts underlying an issue of law. For example, in *Sheldon Appel, supra,* 47 Cal.3d 863, the California Supreme Court considered whether the jury or the court was required to determine, in a malicious prosecution action, whether the prior action had been brought without probable cause. (*Id.* at p. 874.) The existence of probable cause had "traditionally been viewed as a question of law to

be determined by the court, rather than a question of fact for the jury." (*Id.* at p. 875.) However, *Sheldon Appel* made clear that while "the probable cause determination has always been considered a question of law for the court, the cases have also made clear that if the facts upon which the defendant acted in bringing the prior action 'are controverted, they must be passed upon by the jury before the court can determine the issue of probable cause . . . . "What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. The former is exclusively for the court, the latter for the jury." ' [Citations.]" (*Sheldon Appel, supra,* at pp. 877, 881, 884; see also *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1557 [8 Cal.Rptr.2d 552].) In other circumstances as well, it has been held that the jury is to determine the facts underlying the court's determination of a legal issue. (E.g., *Dalrymple v. United Services Auto. Assn.* (1995) 40 Cal.App.4th 497, 517 [46 Cal.Rptr.2d 845] [applying *Sheldon Appel* framework to legal question of whether insurer had proper cause to pursue declaratory relief action and concluding that if factual dispute about insurer's knowledge existed, jury would be required to resolve conflicting evidence]; *Institute of Athletic Motivation v. University of Illinois* (1980) 114 Cal.App.3d 1, 13-14, fn. 5 [170 Cal.Rptr. 411] ["Ordinarily, the existence of the privilege [in a defamation action] is a legal question for the court. . . . While the jury may be required to determine disputed facts relating to the existence of the privilege, it is for the court to decide whether the facts found by the jury made the publication privileged . . ."].)

We believe that a similar structure is mandated here by section 11488.4, subdivision (g), considered in the context of the statutory scheme. As noted, section 11488.5, subdivision (e)'s provisions—that unless the trier of fact finds the seized property was used for a forfeitable purpose, the court "shall order the seized property *released to the person it determines is entitled thereto*" and "If the court or jury finds that the seized property was used for a purpose for which forfeiture is permitted, but does not find that a person claiming an interest therein, *to which the court has determined he or she is entitled*"—strongly suggest that the court is to make the *legal* determination of whether the claimant has standing. Under our interpretation, the trial court does just that, either prior to the forfeiture hearing (if the facts underlying the standing inquiry are undisputed) or at the forfeiture hearing based upon the facts found by the jury (if the facts underlying the standing inquiry are disputed and a jury trial is not waived).

Section 11488.5, subdivision (a)(2) strongly suggests that the jury is to try the factual issues relevant to standing. As noted, section 11488.5, subdivision (a)(2) states that a claimant who claims "that the property was assigned

to him or to her prior to the seizure or notification of pending forfeiture of the property under this chapter" shall file a claim, and *"that interest shall be adjudicated at the forfeiture hearing."* (Italics added; see also § 11488, subd. (c) [presumption that person to whom receipt for property was issued is owner may "be rebutted at the forfeiture hearing specified in Section 11488.5"].) The language requiring adjudication of the interest at the hearing is mandatory. (*Common Cause v. Board of Supervisors, supra,* 49 Cal.3d at p. 443 [use of word "shall" in statute is construed as mandatory].) ▮▮▮▮

▮▮ Therefore, it appears that the Legislature intended to require that a claimant's interest in the seized property be adjudicated at the forfeiture hearing, presumably by the trier of fact, i.e., the jury unless waived.[9]

▮▮ A further and more fundamental reason for concluding that the jury must determine disputed issues of fact relevant to standing is that to allow the trial court to make the factual determination of the claimant's ownership, under the circumstances presented here, would eviscerate Plascencia's right to a jury hearing on the forfeiture. As noted, a claimant in a forfeiture proceeding has not only a statutory right to jury trial (§ 11488.5, subd. (c)(2)), but a California constitutional right as well. Article I, section 16 of the California Constitution provides that trial by jury is "an inviolate right and shall be secured to all . . . ." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 75 [109 Cal.Rptr.2d 1, 26 P.3d 332].) "The constitutional right to a jury trial is the right as it existed at common law, when the state Constitution was first adopted." (*Id.* at pp. 75-76; *Chevrolet Coupe, supra,* 37 Cal.2d at pp. 286-287.) In the seminal case of *Chevrolet Coupe, supra,* 37 Cal.2d 283, the California Supreme Court held that a claimant in a forfeiture proceeding such as the one at issue here was entitled to a jury determination at common law. There, a claimant's car was seized after it was allegedly used to transport marijuana. The trial court denied the claimant's request for a trial by jury on the forfeiture. *Chevrolet Coupe* reasoned, " 'this forfeiture proceeding by the State is the type of action which was cognizable

---

[9]Although read literally, section 11488.5, subdivision (a)(2) appears to pertain only to interests arising through assignments of property, we do not think such an interpretation is warranted. The "assignment" language echoes the wording in section 11488.4, subdivision (g) (a nondefendant claimant can seek return of property "if that person can show standing by proving an interest in the property not assigned subsequent to the seizure or filing of the forfeiture petition"). Therefore, it appears that the Legislature used the word "assigned" broadly in sections 11488.4, subdivision (g) and 11488.5, subdivision (a)(2), as a way of differentiating defendant and nondefendant claimants. Indeed, construing section 11488.5, subdivision (a)(2) to apply only to interests arising through assignments would lead to absurd results. There would appear to be no logical reason to differentiate assignments from other legally cognizable interests for purposes of their proof at the forfeiture hearing. (*People v. $1,930 United States Currency* (1995) 38 Cal.App.4th 834, 843 [45 Cal.Rptr.2d 322] [it is a settled principle of statutory interpretation that a statute should not be given a literal meaning if doing so would result in absurd consequences unintended by the Legislature].)

in a common-law court, and triable by a jury in the Court of Exchequer, according to the course of the common law; that trial by jury was recognized as a right in the trial of actions for the forfeiture of property seized because used in violation of law at common law at the time of the adoption of the Constitution of California, and that *appellant had a constitutional right to a trial by jury of the issues of fact in this case.*' " (*Id.* at p. 300, italics added.) "While property kept in violation of law which is incapable of lawful use and declared to be a nuisance *per se* may be forfeited without a trial by jury under the police power, it does not follow that property ordinarily used for lawful purposes—innocent property—may be forfeited without a trial by jury where an issue of fact is joined as to whether the property was being used for an unlawful purpose or is to be taken from an innocent owner. There is no general constitutional right to a jury trial in actions for the seizure and forfeiture of contraband articles. But property is not contraband or a public nuisance merely because it was instrumental in the commission of a public offense." (*Id.* at p. 299, fn. omitted.)

Here, the question of standing—i.e., whether Plascencia owned the cash found in the box spring—is manifestly a factual issue. Plascencia's ownership of the money cannot, under the facts of this case, be separated from the merits of the forfeiture action. Indeed, the question of Plascencia's ownership of the money *is* the forfeiture case. The cash found in the box spring cannot simultaneously have been the fruits of Velasquez's drug dealing and Plascencia's legitimately earned savings and the proceeds from her sale of property. If the trier of fact determines that Plascencia owns the money and derived it from her legitimate business dealings, then the trier of fact will ispo facto have *rejected* any claim that the "owner of any interest in the seized property consented to the use of the property with knowledge that it would be or was used for a purpose for which forfeiture is permitted, . . ." (§ 11488.5, subd. (d)(1).) In other words, the question of standing and the merits of the forfeiture proceeding collapse into one and the same inquiry. Plascencia has presented admissible evidence that, if believed by the jury, would establish her ownership of the money. Under these circumstances, assigning to the trial court the task of resolving disputed factual issues and making credibility determinations at a pretrial hearing would completely eviscerate Plascencia's right to a jury.

The right to trial by jury is a basic and fundamental part of our system of jurisprudence and should be zealously guarded by the courts. (E.g., *Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654 [141 Cal.Rptr. 604]; *Fireman's Fund Ins. Companies v. Younesi* (1996) 48 Cal.App.4th 451, 459 [55 Cal.Rptr.2d 671].) The Legislature cannot require procedures that impair a litigant's constitutional right to jury trial. (*Chevrolet

*Coupe, supra,* 37 Cal.2d at p. 287; *Vomaska v. City of San Diego* (1997) 55 Cal.App.4th 905, 910 [64 Cal.Rptr.2d 492].) "We presume that the Legislature understands the constitutional limits on its power and intends that legislation respect those limits." (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129 [96 Cal.Rptr.2d 485, 999 P.2d 718].) "In case of doubt . . . the issue should be resolved in favor of preserving a litigant's right to trial by jury." (*Byram v. Superior Court, supra,* 74 Cal.App.3d at p. 654; *Fireman's Fund Ins. Companies v. Younesi, supra,* 48 Cal.App.4th at p. 459.) ■■■ Applying these principles, we are compelled to conclude that the Legislature did not intend section 11488.4, subdivision (g), to mandate that the trial court determine disputed factual issues relevant to standing in a pretrial proceeding, on the facts presented in the instant case.

■■■ The People urge that the trial court must resolve disputed factual issues underlying the question of standing because the question of whether a party has standing to challenge a forfeiture is jurisdictional. However, it has been recognized in the federal system that when a jurisdictional issue turns upon disputed facts intertwined with the merits of the case, the court should not resolve the factual dispute prior to trial but should employ a summary judgment standard. "Ordinarily, where a jurisdictional issue is separable from the merits of a case, the court may determine jurisdiction" and is " 'free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. . . . "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." ' [Citations.]" (*Roberts v. Corrothers* (9th Cir. 1987) 812 F.2d 1173, 1177.) However, these standards "are not appropriate for determining jurisdiction in a case like this, where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.' [Citations.] In such a case, the district court assumes the truth of allegations . . . unless controverted by undisputed facts in the record." (*Id.* at p. 1177; *U.S. v. North Carolina* (4th Cir. 1999) 180 F.3d 574, 580 ["When a factual attack on subject matter jurisdiction involves the merits of a dispute, ' "[t]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." ' [Citation.]"]; *Cameron v. Children's Hosp. Medical Center* (6th Cir. 1997) 131 F.3d 1167, 1170 [whether a federal district court has subject matter jurisdiction is "a question for the court, not a jury, to decide, even if the determination requires making factual findings, *unless the jurisdictional issue is inextricably bound to the merits of the case.*" (Italics added.)]; *McMorgan & Co. v. First California Mortg. Co.* (N.D.Cal. 1995) 916 F.Supp. 966, 973-974.)

The People advance several additional arguments in support of their position. First, they urge that such a pretrial factual determination is necessary to aid the government in weeding out false claims. We are sympathetic to the People's concern. We recognize that civil forfeitures are "intended to be remedial by removing the tools and profits" from persons engaged in the illicit drug trade. (§ 11469, subd. (j); *People v. Property Listed in Exhibit One* (1991) 227 Cal.App.3d 1, 10 [277 Cal.Rptr. 672].) For years, courts have recognized that there is a substantial danger of false claims in forfeiture proceedings. (*Mercado v. U.S. Customs Service* (2d Cir. 1989) 873 F.2d 641, 645.) "[A]ppearances may be manipulated and deceptive, especially in the world of drug trafficking and other illegal operations. It has been recognized that people engaged in illegal activities, especially when needing to conceal illegitimate funds and being aware of forfeiture statutes, often attempt to disguise their interests in property by not placing title in their own names." (*U.S. v. One 1982 Porsche 928* (S.D.N.Y. 1990) 732 F.Supp. 447, 451; see also *U.S. v. One 1977 36 Foot Cigarette Ocean Racer* (S.D.Fla. 1985) 624 F.Supp. 290, 294-295 ["things are often not what they appear to be, especially in the world of drug trafficking . . ."].)

■ The short answer to this argument, of course, is that concerns about administrative efficiency and judicial economy cannot overcome a claimant's right to a jury trial. In any event, we believe that the People's concerns are overstated. As the People acknowledge, often the government will not challenge a claimant's standing. (E.g., Smith, *supra,* ¶ 9.04 [2][b], p. 9-70.7 [in the vast majority of cases, the government does not challenge standing].) The government can always challenge the claimant's standing before the forfeiture hearing, for example by bringing a summary judgment motion. It seems unlikely that most persons with no connection to the seized res, who merely file a claim after reading a notice in the newspaper, could withstand summary judgment.[10] Finally, the claimant is required, as a threshold issue at the forfeiture hearing, to prove his or her standing, i.e., legally cognizable interest in the property. If he or she fails to meet that burden, the government will not be put to its proof at the hearing.

---

[10]We observe that many federal courts have concluded that a claimant's bare assertion of title to or possession of seized property is insufficient to confer standing, and a claimant is required to come forward with evidence showing dominion and control over the property to establish his or her interest. (E.g., *Kadonsky v. U.S.* (5th Cir. 2000) 216 F.3d 499, 508; *U.S. v. $321,470.00, U.S. Currency* (5th Cir. 1989) 874 F.2d 298, 303-304; *U.S. v. $515,060.42 in U.S. Currency* (6th Cir. 1998) 152 F.3d 491, 498; *U.S. v. Vacant Land* (9th Cir. 1993) 15 F.3d 128, 130; *U.S. v. Real Estate 2030 E. Monroe, Springfield* (C.D.Ill. 1995) 884 F.Supp. 1218, 1222; Smith, *supra,* ¶ 9.04[c][i], pp. 9-70.10-9-70.13; but see *U.S. v. 5 S 351 Tuthill Road, Naperville, Ill.* (7th Cir. 2000) 233 F.3d 1017, 1023.) Here, Plascencia presented evidence amounting to more than a bare assertion of ownership. She accounted for the purported source of the cash; both she and her daughter testified about the sale of the Planque bar; and both testified that Plascencia used the box spring as her bank. Plascencia also presented a document that she claimed evidenced the sale of the bar. Thus, here the court was not faced

We believe that having the jury determine disputed factual issues at the forfeiture hearing as a prerequisite to the court's determination of whether that interest suffices to establish standing furthers important policy concerns articulated in the statutory scheme. Section 11469, subdivision (j), states the widely recognized principle that the civil forfeiture laws "can have harsh effects on property owners in some circumstances." (§ 11469, subd. (j); see also *U.S. v. 5 S 351 Tuthill Road, Naperville, Ill., supra,* 233 F.3d at p. 1023 ["both the Supreme Court and the Congress have recognized the potentially draconian reach of the civil forfeiture laws . . ."].) Requiring the court to determine standing at a full-fledged pretrial hearing would burden legitimate claimants and would waste judicial resources.

The People next point to federal cases holding that where the issue of standing turns upon disputed issues of fact, the trial court is required to, or may, hold an evidentiary hearing to resolve disputed facts related to standing. (*U.S. v. 1998 BMW "I" Convertible* (8th Cir. 2000) 235 F.3d 397, 400; *Bischoff v. Osceola County, Fla.* (11th Cir. 2000) 222 F.3d 874, 881-882, fn. 10; *United States v. $364,960.00 in U.S. Currency* (5th Cir. 1981) 661 F.2d 319, 326.) **(11b)** However, we are not bound to follow the precedents of the lower federal courts. (*People v. Cleveland* (2001) 25 Cal.4th 466, 480 [106 Cal.Rptr.2d 313, 21 P.3d 1225].) In any event, we note that the majority of federal courts hold that a claimant need only produce evidence establishing a colorable claim, a standard which seems to us to be in tension with the resolution of the issue at a full-blown evidentiary hearing intended to resolve disputed facts. (E.g., *U.S. v. One Parcel of Real Property* (1st Cir. 1991) 942 F.2d 74, 78 [to satisfy standing requirement, all "that needs to be shown is a 'facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and "prudential considerations defining and limiting the role of the court" ' [Citations.]"]; *U.S. v. Cambio Exacto, S.A., supra,* 166 F.3d at p. 527 [" '[A]n allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture' "]; *U.S. v. $9,041,598.68, supra,* 163 F.3d at p. 245 [claimant need not prove the merits of his underlying claim to establish standing, but need only show a facially colorable interest in the proceedings]; *In re Seizure of $82,000 more or less* (W.D.Mo. 2000) 119 F.Supp.2d 1013, 1017 ["Definitive proof of ownership is not needed to establish standing"]; *U.S. v. Forfeiture, Stop Six Center* (N.D.Tex. 1991) 781 F.Supp. 1200, 1201-1202 [claimant required to show only a " 'facially colorable interest in the proceedings' " at summary judgment stage; requiring evidence documenting source of funds "improperly accelerates Claimant's burden of proving innocent ownership"].)

with a bare assertion of ownership or bare title and we have no occasion to consider whether the federal law on these points is the rule in California as well.

Additionally, federal forfeiture statutes are an imperfect template upon which to trace our interpretation. While the California forfeiture statutes were initially patterned after the federal forfeiture laws, *People v. $497,590 United States Currency* (1997) 58 Cal.App.4th 145, 151 [68 Cal.Rptr.2d 185]; *People v. $28,500 United States Currency, supra,* 51 Cal.App.4th at page 468, the 1994 amendments to California's statutory scheme imposed very different burdens of proof on the government and the claimant than did the analogous federal forfeiture law then in effect. The current version of the California forfeiture statute requires that *the government* prove the owner of an interest in the property knowingly consented to the illicit use of the property, either beyond a reasonable doubt or by clear and convincing evidence, depending upon the nature of the property involved. (§§ 11488.4, subd. (i), 11488.5, subd. (d)(1).) In contrast, prior to the passage of the federal Civil Asset Forfeiture Reform Act of 2000, 18 United States Code section 983, the federal drug forfeiture statute "tilted heavily in the government's favor. The government bore the minimal burden of demonstrating probable cause for instituting the forfeiture proceeding. [Citations.] Once probable cause was established, the burden of proof shifted to the property owner (the claimant), who could avoid forfeiture only by establishing by a preponderance of the evidence that the property was not subject to forfeiture." (*U.S. v. $80,180.00 in U.S. Currency* (9th Cir. 2002) 303 F.3d 1182, 1184.) Thus, while federal forfeiture cases provide persuasive authority in some respects, they are not particularly germane to questions related to the burden of proof in California actions after the 1994 amendment to the California statutes.

Finally, the People urge that our prior unpublished opinion in *People v. $68,317 United States Currency, supra,* B122554, is the law of the case and mandated that the trial court determine the factual issues relevant to standing. We disagree. ■ The law of the case doctrine holds that when an appellate opinion states a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to through its subsequent progress in the lower court and upon subsequent appeal. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1161 [64 Cal.Rptr.2d 892, 938 P.2d 950]; *Clemente v. State of California* (1985) 40 Cal.3d 202, 211-212 [219 Cal.Rptr. 445, 707 P.2d 818].) For the doctrine to apply, " ' "the point of law involved must have been necessary to the prior decision, . . . the matter must have been actually presented and determined by the court, and . . . application of the doctrine will not result in an unjust decision." [Citations.]' [Citation.]" (*People v. Ramos, supra,* 15 Cal.4th at p. 1161.)

Our prior opinion expressly declined to consider or rule upon the question of whether the issue of standing should be decided by the jury, as the issue

had not been raised by the parties. (*People v. $68,317 United States Currency, supra,* B122554.) Instead, the crux of our holding was that the trial court could not strike Plascencia's claim because disputed issues of fact existed on the question of standing. We explained, "Although standing is a legal issue, its resolution is founded on the facts of the case, as the trier of fact finds them to be." In short, our prior opinion is in no way inconsistent with our holding today and the law of the case doctrine has no application here.

In sum, the trial court correctly ruled that the determination of disputed facts and the evaluation of witness credibility was for the jury. Once the jury has rendered a factual finding on the question of Plascencia's interest in the seized currency, then the trial court can properly resolve the legal question of whether Plascencia has standing to contest the forfeiture. Accordingly, the People's petition for a writ of mandate is denied.

## DISPOSITION

The People's petition for writ of mandate is denied and the matter is remanded for further proceedings consistent with the opinions expressed herein. The stay entered by this court on August 24, 2001, is hereby lifted.

Klein, P. J., and Croskey, J., concurred.