Filed 5/15/14  P. v. $47,638 in US Currency CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B243007 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BS133902) |
| FORTY-SEVEN THOUSAND SIX HUNDRED THIRTY-EIGHT DOLLARS ($47,638) IN U.S. CURRENCY, | |
| Defendant, | |
| JUAN SOTO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara A. Meiers , Judge.  Affirmed.

Martin Wolf, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Juan Soto (aka) Forty-seven thousand six hundred thirty-eight dollars ($47, 638.00) in U.S. Currency, appeals from an order denying his motion for relief from a default judgment in a drug asset forfeiture proceeding.

The order is affirmed.

## BACKGROUND

On August 15, 2011, defendant Soto was arrested after being found in a car with 22 bindles containing an off-white powdery substance resembling cocaine. Soto also had $698 cash in his possession. This arrest ultimately led to his conviction for possessing a controlled substance for sale in violation of Health and Safety Code section 11351.[1]

On the day of his arrest, Soto told police he had approximately $40,000 cash at his house, so officers went to search his Van Nuys home. The woman who answered the door identified herself as his wife, Magdalena Gutierrez. Just after the officers found a great deal of cash inside a jacket hanging in a bedroom closet, Gutierrez asked for a search warrant and the search was halted. Returning the following day with a warrant, the officers found $46,940 cash inside the jacket. After a police dog alerted to the scent of narcotics, this money was seized.

That same day, Soto was issued a Receipt for Property Taken into Custody which listed the money seized from the house and the car, along with several other items.[2]

On August 17, 2011, a follow-up police report recorded Gutierrez's statement about the cash seized from the house. Gutierrez said she and Soto had saved money for over 20 years since they arrived from Mexico. Soto had worked as a restaurant delivery person for 20 years, but recently lost his job. Gutierrez was unemployed, but made

---

[1]     All further references are to the Health and Safety Code unless otherwise specified.

[2]     The property receipt listed 22 "bindles with powder cocaine," a key hider, $47,638 in currency, four cell phones, a Wells Fargo check in Soto's name, and a utility bill in Soto's name.

2

money by purchasing items like purses and coffee pots wholesale and selling them to friends and relatives.

In superior court on September 12, 2011, the People filed a Petition for Forfeiture pursuant to section 11470 et seq. Thereafter, pursuant to section 11488.4, subdivision (e), a Notice of Judicial Forfeiture was published in a newspaper of general circulation once a week for three successive weeks, notifying any interested parties of the People's intent to forfeit the seized currency.

On November 16, 2011, the Forfeiture Petition, a Notice of Forfeiture, and a blank Claim Opposing Forfeiture were sent by certified mail to Soto's home. A return receipt dated November 18, 2011, showed a signature acknowledging delivery and receipt of these documents. The signature on the return receipt is not legible. No claim form was filed within the prescribed 30-day period, or within the subsequent months.

On January 13, 2012, the People filed an Application for Default Judgment of Forfeiture and for an Order for Distribution. On January 19, 2012, the trial court entered a default judgment awarding $47,638 to the People, and ordering the money to be distributed pursuant to section 11489, subdivision (b). On January 26, 2012, the forfeiture was completed and the money distributed.

On February 14, 2012, Soto was convicted of possessing a controlled substance for sale (§ 11351) in the underlying criminal case (BA387826).

On April 11, 2012, Soto filed a Claim Opposing Forfeiture seeking return of the $47,638. On the same day, he filed a motion to vacate and set aside the default judgment pursuant to Code of Civil Procedure section 473, alleging he had not received proper notice of the forfeiture action and the District Attorney's Office had led him to believe all forfeiture issues would be resolved in the criminal court. This motion was denied. On June 19, 2012, Soto filed a second motion to set aside the default judgment, asserting the earlier motion had been filed "without an attorney affidavit of fault. In this motion, an attorney affidavit of fault is attached." Soto alleged he did not respond to the Notice of Forfeiture because counsel had been advised by the District Attorney's Office that the forfeiture issue would be settled in the criminal case, only to have the District Attorney

3

subsequently announce this could not be done because the amount involved was more than $25,000. The trial court denied this second motion as well.

Soto now appeals the order denying his request for post-judgment relief.

## CONTENTIONS

1. Soto did not receive adequate and proper notice of the forfeiture action.

2. Soto demonstrated mistake or excusable neglect under Code of Civil Procedure section 473.

3. The People should be equitably estopped from enforcing the default judgment.

## DISCUSSION

1. *Soto received adequate and proper notice of the forfeiture action.*

Soto contends his motion to vacate the default judgment should have been granted because he never received proper notice of the forfeiture action. This claim is meritless.

 a. *Legal principles.*

As we explained in *People v. Superior Court (Plascencia)* (2002) 103 Cal.App.4th 409, 418-419, fn. omitted:

" 'California's drug asset forfeiture law has undergone numerous revisions since its enactment in 1972.' [Citations.] The current law, section 11469 et seq., as amended effective 1994, sets forth a comprehensive scheme governing forfeitures of controlled substances, property, cash, and other things of value used in connection with the trade in controlled substances. As pertinent here, the statutory scheme provides that currency is subject to forfeiture if it is furnished or intended to be furnished in exchange for a controlled substance, traceable to such an exchange, or used or intended to be used to facilitate trafficking in, or the manufacture of, various controlled substances. (§ 11470, subd. (f).) Property subject to forfeiture may be seized by a peace officer if there is probable cause to believe the property was used for the specified illicit purposes. (§ 11471, subd. (d).)

4

"If the appropriate governmental agency determines, based upon the facts, that property valued over $25,000 is forfeitable, the Attorney General or district attorney (hereinafter, the government) must file a petition of forfeiture in the superior court, within specified time limits, and must comply with various service and notice requirements.  (§ 11488.4, subds (a), (c), (d), (e), (f), (j).)

"Once a verified claim is filed, the claimant is entitled to a hearing by jury, at which the provisions of the Code of Civil Procedure generally apply.  (§ 11488.5, subds (a), (c)(2) & (3).)  To obtain forfeiture, the government must show at the hearing that: 'the owner of any interest in the seized property consented to the use of the property with knowledge that it would be or was used for a purpose for which forfeiture is permitted,' (§ 11488.5, subd. (d)(1)), and the property was so used (§ 11488.5, subd. (e)). If the seized property is cash over $25,000, the government must prove these elements by clear and convincing evidence.  (§ 11488.4, subd. (i)(4).)  The government must prove a 'nexus between the seized funds and a narcotics transaction. [Citation.]'  [Citation.] There is no requirement that a criminal conviction have been obtained in the underlying or related case.  (§ 11488.4, subd. (i)(4).)"

" 'Health and Safety Code sections 11470-11489 set forth a detailed procedure for the seizure and forfeiture of [specified property] traceable to unlawful drug transactions. Under the statutory scheme, title to the forfeitable property vests in the state from the time of the illegal conduct (§ 11470, subd. (h)) subject, however, to the proviso that any person claiming an interest in the property may file a verified claim in superior court within the time provided.  (§ 11488.5.)  [¶] *In order to satisfy due process requirements, the statute specifies three types of notice of the forfeiture proceedings*.  First, the person from whose possession the property was seized is entitled to service of the petition of forfeiture.  (§11488.4, subd. (c).)  Second, "any [other] person who has an interest in the seized property" is entitled to service of a notice of seizure and intended forfeiture along with instructions on filing a claim.  (§ 11488.4, subds. (c), (j)(5).)  And third, notice of forfeiture must be published once a week for three consecutive weeks in a newspaper of general circulation in the county of seizure.  (§ 11488.4, subd. (e).)'  [Citation.]"

5

(*Nasir v. Sacramento County Off. of the Dist. Atty.* (1992) 11 Cal.App.4th 976, 982, fn. omitted, italics added.)

"Three final observations are in order. First, the provisions of the Code of Civil Procedure are applicable to the proceedings in chapter 8 regarding the seizure and disposition of property subject to forfeiture unless otherwise inconsistent with the provisions or procedures in that chapter. (§ 11488.4, subd. (i).) [¶] Two, federal case law is instructive in the area of forfeiture because the California forfeiture statute is patterned after the federal drug forfeiture statute. (Cf. Health & Saf. Code, § 11470 et seq. with 21 U.S.C. § 881.) [¶] Three, in construing these statutes, it must be remembered that '[s]tatutes imposing forfeitures are not favored and are to be strictly construed in favor of the persons against whom they are sought to be imposed.' [Citations.]" (*People v. $28,500 United States Currency* (1996) 51 Cal.App.4th 447, 463-464.)

> b. *Discussion*.

Soto concedes the People complied with the statutory requirements for giving him notice of a forfeiture action under section 11488.4,[3] but he argues the statute's "minimum standards" did not meet due process requirements because he did not receive actual notice of the forfeiture proceeding. Soto is wrong; there was no due process violation.

---

[3]    Section 11488.4, subdivision (c), provides in pertinent part: "The Attorney General or district attorney shall make service of process regarding this petition upon every individual designated in a receipt issued for the property seized. In addition, the Attorney General or district attorney shall cause a notice of the seizure, if any, and of the intended forfeiture proceeding, as well as a notice stating that any interested party may file a verified claim with the superior court of the county in which the property was seized . . . to be served by personal delivery or by registered mail upon any person who has an interest in the seized property or property subject to forfeiture other than persons designated in a receipt issued for the property seized. Whenever a notice is delivered pursuant to this section, it shall be accompanied by a claim form as described in Section 11488.5 and directions for the filing and service of a claim."

The United States Supreme Court has held that, in the context of civil drug asset forfeiture cases, due process is satisfied if the government gives notice that is " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (*Dusenbery v. United States* (2002) 534 U.S. 161, 168 [122 S.Ct. 694].) "[A]bsent exceptional circumstances, written notice of forfeiture by certified mail to the claimant's residence satisfies due process *even if the claimant does not receive actual notice as a result*." (*Krecioch v. United States* (7th Cir. 2000) 221 F.3d 976, 981, italics added.)

The Attorney General argues due process was satisfied because a certified letter notifying Soto of the forfeiture proceeding was delivered to his home, as shown by the signed acknowledgment of receipt. Although Soto asserts he did not sign the acknowledgment, due process did not require his signature. In *Lobzun v. U.S.* (7th Cir. 2005) 422 F.3d 503, a DEA agent sent a notice of seizure by certified mail to Lobzun's home. The return receipt indicated the mailing had been received at the correct address, but the signature on the acknowledgment form was illegible. This was held to be adequate and proper notice because "[t]he delivery was confirmed by a third-party carrier through the return receipt signed at that address." (*Id*. at p. 508.)

Soto does not dispute the authority of the case law cited by the Attorney General. Rather, he argues that, because there were four adults living at his house, service by mail was inadequate. However, as the Attorney General points out, Soto provides no citation to the record in support of this purported fact. Moreover, Soto cites no authority holding the due process calculus would differ if there were four adults living in his house instead of two. Soto also argues that, because Gutierrez was an interested party in the seized currency, she too should have been given official notice of the forfeiture. The Attorney General argues there is no authority holding that a cohabitating spouse is automatically an interested party, an assertion Soto does not dispute. In any event, we agree with the

7

Attorney General's additional point that any inadequate notice to Gutierrez did not impair Soto's due process rights.[4]

Finally, Soto claims the default judgment was void for lack of personal jurisdiction because he was never served with a summons. But a forfeiture proceeding, a civil in rem action in which the property is the defendant (see *People v. Superior Court (Plascencia), supra,* 103 Cal.App.4th at p. 418), does not require service of a summons. "While the Code of Civil Procedure applies to forfeiture proceedings under chapter 8 of the Health and Safety Code unless inconsistent with provisions in that chapter, Code of Civil Procedure sections 415.50 (service by publication of a summons) and 412.20 (defining summons) . . . do not apply, as the notice requirements for forfeiture proceedings are specifically set forth in section 11488.4. [Citation.]" (*People v. Parcel No. 056-500-09* (1997) 58 Cal.App.4th 120, 126.) Soto has conceded the People complied with the notice requirements of section 11488.4.

We conclude Soto was not deprived of adequate and proper notice of the forfeiture action.

2. *Soto has not established mistake or excusable neglect under Code of Civil Procedure section 473.*

Soto contends the trial court should have granted his motion for relief from the default judgment because he met the requirements of Code of Civil Procedure section 473. This claim is meritless.

a. *Legal principles.*

" 'A party who seeks relief under [Code of Civil Procedure] section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is

---

[4]    Gutierrez is not a party to this action, but mentioned to a police officer the seized money consisted of legitimate savings. Even if Gutierrez is theoretically entitled to notice under section 11488.4, subdivision (c), as an "interested party," Soto has not shown the People's failure to provide notice to her affects his claims in the instant action.

8

imputed to his client and may not be offered by the latter as a basis for relief.' [Citation.] In determining whether the attorney's mistake or inadvertence was excusable, 'the court inquires whether "a reasonably prudent *person* under the same or similar circumstances" might have made the same error.' [Citation.] In other words, the discretionary relief provision of section 473 only permits relief from attorney error 'fairly imputable to the client, i.e., mistakes anyone could have made.' [Citation.] 'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice.' [Citation.] [¶] The party seeking relief under section 473 must also be diligent. [Citation.] Thus, an application for relief must be made 'within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken.' (§ 473, subd. (b).)" (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258.)

Section 473's " 'broad remedial provisions' [citation] are to be 'liberally applied to carry out the policy of permitting trial on the merits' [citation]. The party seeking relief, however, bears the burden of proof in establishing a right to relief. [Citation.] . . . Whether the moving party has successfully carried this burden is a question entrusted in the first instance to the discretion of the trial court; its ruling will not be disturbed in the absence of a demonstrated abuse of that discretion. [Citation.]" (*Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1410.)

Code of Civil Procedure section 473, subdivision (b), contains a special mandatory relief provision stating, in pertinent part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any . . . resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

9

As we said in *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1248: "The attorney affidavit provision was enacted in 1988. The purpose of the provision was ' "to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits." [Citation.] In the words of the author[,] " 'Clients who have done nothing wrong are often denied the opportunity to defend themselves, simply because of the mistake or inadvertence of their attorneys in *meeting filing deadlines*.' " [Citation.]' [Citation.] [¶] Thus, a party can rely on the mandatory provision of section 473 only if the party is totally innocent of any wrongdoing and the attorney was the *sole* cause of the default or dismissal."

   b. *Discussion*.

Soto claims the trial court was required to grant him relief from the default judgment under the mandatory relief provision of Code of Civil Procedure section 473, subdivision (b). He asserts the Attorney General essentially conceded this point by arguing defense counsel should have realized the District Attorney's Office was statutorily barred from utilizing the nonjudicial forfeiture procedure where the amount seized was $25,000 or more.

But, as the Attorney General points out, Soto has not complied with the requirements for obtaining Code of Civil Procedure section 473 mandatory relief because he has not provided an attorney's sworn affidavit attesting to fault. (Cf. See *Metropolitan Service Corp. v. Casa de Palms, Ltd*. (1995) 31 Cal.App.4th 1481, 1488 ["Defendants' moving papers contained all that was required to show defendants' entitlement to mandatory relief. The motion was filed within six months of the entry of default judgment and contained Attorney Sloey's sworn declaration of his own neglect to answer the complaint."].)

There were two declarations attached to Soto's first motion for relief from default judgment, one by Soto and one by defense counsel Martin Wolf. However, only Soto's declaration was sworn. Two more declarations were attached to Soto's second motion for relief from default judgment, again one by Soto and one by Wolf, and again only

10

Soto's was sworn. Hence, despite Soto's assertion that an attorney affidavit of fault had been attached to the second motion, Wolf's declaration was not sworn and, therefore, the moving papers did not qualify for mandatory relief.

As a result, Soto at most could have been entitled to discretionary relief under Code of Civil Procedure section 473, which depended on whether attorney Wolf committed excusable neglect by failing to realize the District Attorney's Office was statutorily barred from utilizing the nonjudicial forfeiture procedure where the amount seized was greater than $25,000. "[T]he discretionary relief provision of section 473 only permits relief from attorney error 'fairly imputable to the client, i.e., mistakes anyone could have made.' [Citation.] 'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice.' [Citation.]" (*Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at p. 258; see *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1112 ["The failure to introduce readily available, compelling evidence which supports the client's position . . . is not a mistake that a reasonably prudent person in the same circumstances might have made but rather conduct falling below the professional standard of care. Consequently, the trial court acted within its discretion in denying [a] section 473 motion based on its attorney's excusable neglect."]; *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1402 ["Counsel's failure to discharge routine professional duties is not excusable . . . . Even if counsel's failings are characterized as mistakes of law, no relief under section 473 is warranted as 'ignorance of the law coupled with negligence in ascertaining it will certainly sustain a finding denying relief.' "].)

In this case, Wolf's conduct did not constitute excusable neglect because the statutory scheme is quite clear with respect to the difference between judicial and nonjudicial forfeiture.

11

Section 11488.4, subdivision (a), provides, in pertinent part: "*Except as provided in subdivision (j)*, if the Department of Justice or the local governmental entity determines that the factual circumstances do warrant that the moneys, negotiable instruments, securities, or other things of value seized or subject to forfeiture come within the provisions of subdivisions (a) to (g), inclusive, of Section 11470 . . . the Attorney General or district attorney *shall file a petition of forfeiture* with the superior court of the county in which the defendant has been charged with the underlying criminal offense or in which the property subject to forfeiture has been seized . . . ." (Italics added.)

Section 11488.4, subdivision (j), provides, in pertinent part: "The Attorney General or the district attorney of the county in which property is subject to forfeiture under Section 11470 *may*, pursuant to this subdivision, *order forfeiture of personal property not exceeding twenty-five thousand dollars ($25,000) in value*. The Attorney General or district attorney shall provide notice of proceedings under this subdivision pursuant to subdivisions (c), (d), (e), and (f), including: [¶] . . . [¶] (5) The instructions for filing and serving a claim with the Attorney General or the district attorney pursuant to Section 11488.5 and time limits for filing a claim and claim form." Subdivision (j) goes on to state: "If a claim is timely filed, then the Attorney General or district attorney shall file a petition of forfeiture pursuant to this section within 30 days of the receipt of the claim. The petition of forfeiture shall then proceed pursuant to other provisions of this chapter, except that no additional notice need be given and no additional claim need be filed."

Thus, not only does section 11488.4, subdivision (j), make it clear that nonjudicial forfeitures are limited to situations in which the amount seized does not exceed $25,000, but a claim form disputing the seizure must be filed in order to contest a forfeiture no matter how much money is involved.

Case law affirms this reading. "Under section 11488.4, subdivision (j), if the property is within the jurisdictional amount, the district attorney may declare the property forfeit without a judicial proceeding. This procedure is known as nonjudicial or administrative forfeiture and was enacted to provide forfeiture without court

12

involvement. . . . [¶] With nonjudicial forfeiture, if the district attorney provides the requisite notice and no claim is filed, the district attorney prepares a written declaration of forfeiture of the subject property to the state and disposes of the property in accordance with section 11489. (§ 11488.4, subd. (j).) *The purpose of nonjudicial forfeiture is to save the government the time and expense of a judicial proceeding in cases where the value of the property seized is small. [Citation.] [¶] The nonjudicial forfeiture proceeding is terminated, however, if anyone duly submits a claim to the seized property in response to the notice of nonjudicial forfeiture. If a claim is filed, the district attorney cannot pursue nonjudicial forfeiture but must initiate a judicial forfeiture proceeding. [Citations.]"* (*People v. Property Listed in Exhibit One* (1991) 227 Cal.App.3d 1, 6-7, italics added; see also *People v. Shanndoah* (1996) 49 Cal.App.4th 1187, 1191 ["Absent a claim to the property being made, a forfeiture under the Health and Safety Code can be effected without judicial action in a purely administrative proceeding."] *People v. ($10,153.38) in United States Currency* (2009) 179 Cal.App.4th 1520, 1523, fn. 2 [because claim was filed challenging the forfeiture, "the People were unable to process the forfeiture proceedings as an administrative matter"].)

Hence, Soto's attorney could have learned from a simple reading of the statute *both* that a nonjudicial or administrative forfeiture is only possible if the amount seized is $25,000 or less, *and* that irrespective of which procedure is used a claim must be filed in order to challenge the forfeiture.

The Attorney General also argues Soto failed to show he exercised diligence in seeking relief because he first moved to set aside the default judgment on April 11, 2012, almost three months after it was entered on January 19, 2012. Soto offers no explanation for this delay, asserting only that the motion was timely because it was brought within the outside six-month period required by the statute.

We conclude the trial court did not abuse its discretion by denying Soto relief from the default judgment under Code of Civil Procedure section 473.

13

3. *Equitable estoppel claim not established.*

Soto contends the People should be equitably estopped from enforcing the default judgment "because he reasonably relied on the District attorney's affirmative statements that all matters, including the forfeiture, could be resolved in the criminal case, and Soto was ignorant of any dollar limit upon which the District attorney's authority rests." This claim is meritless.

a. *Legal principles.*

" 'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing.  It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment.  The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.  [Citation.]'  [Citations.]  [¶]  Equitable estoppel 'will not apply against a governmental body except in unusual instances when necessary to avoid grave injustice and when the result will not defeat a strong public policy. [Citation.]"  (*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 279.)  "In general, the law 'particularly' disfavors estoppels 'where the party attempting to raise the estoppel is represented by an attorney at law.'  [Citation.]  For purposes of analyzing estoppel claims, attorneys are 'charged with knowledge of the law in California.'  [Citation.]" (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1316.)

Although "[e]quitable estoppel may be asserted against the government in some circumstances," "principles of estoppel may not be invoked to directly contravene statutory limitations." (*Medina v. Board of Retirement* (2003) 112 Cal.App.4th 864, 868-

14

869.) "[E]stoppel is barred where the government agency to be estopped does not possess the authority to do what it appeared to be doing." (*Id*. at p. 870.)[5]

>    b. *Discussion*.

Soto argues: "The facts are rather clear that Respondent made representations that the civil forfeiture action could be resolved together with the criminal action, provided Appellant was able to produce sufficient evidence of the legal source of his seized money. Then, once the evidence was produced, the Respondent changed his position and stated that he was limited in his ability to resolve the civil forfeiture because the amount was over $25,000. Apparently, *this particular assistant district attorney* could resolve civil forfeiture actions together with a criminal action provided the amount in controversy was less than $25,000." (Italics added.) In our view, however, the facts are not so clear. Moreover, Soto has failed, even at this late stage, to correct his fundamental misreading of the forfeiture statute.

Soto's sworn declaration states: "In the criminal case, I supplied the District Attorney's Office two computer disks containing PDF's of [my] bank account, tax returns and sources of income that would show that that source of fund[s] was from my family's work. The case was continued a number of times based upon the representations of the District Attorney's Office that they did not want [to] keep money if from appropriate sources and they needed additional time to review the financial records. Upon completion of the review, just prior to trial, the District Attorney's office informed

---

[5]    (See, e.g., *Medina v. Board of Retirement, supra,* 112 Cal.App.4th at pp. 870-871 ["respondents cannot be estopped from reclassifying appellants as general members, because they did not possess the authority to continue to classify appellants as safety members after they became district attorneys even though they appeared to be doing so"]; *City of Pleasanton v. Board of Administration* (2012) 211 Cal.App.4th 522, 543 [because the law "at all times preclude[d] PERS from treating Linhart's standby pay as pensionable compensation, we hold any award of benefits to Linhart based on estoppel is barred as a matter of law."]; *Fleice v. Chualar Union Elementary School Dist., supra,* 206 Cal.App.3d at p. 893 [estoppel inapplicable where school board had no power to classify second-year probationary teacher as permanent and grant tenure on that basis].)

me that they cannot resolve the issue of forfeiture in the criminal case since the amount claimed was in excess of $25,000. At that point, default had already been entered for forfeiture."

But there is nothing in the record corroborating Soto's personal opinion the financial records he submitted proved the seized funds consisted of legitimate life savings rather than drug profits. Moreover, the unsworn declaration from attorney Wolf is curiously non-specific. Wolf states: "Defendant's counsel [was] advised by the District Attorney that the forfeiture issue can be settled in the criminal case . . . as long as proof of source of funds can be established. Based upon that representation by the DA's office that the forfeiture issues can be settled in the criminal case, our office advised Mr. Soto he would not need to respond to any civil notice [of] forfeiture if properly served since the district attorney's office in the criminal case said they would resolve the forfeiture issue upon proof of source of the funds seized." This declaration neither names the deputy district attorney who made the alleged misrepresentations, nor specifies the dates when such communications occurred.

In addition, it appears Soto's attorney acted unreasonably by failing to research the statutory scheme for himself. "[T]he party claiming an estoppel must also prove it 'did not have actual knowledge of the true facts [and] did not have notice of facts sufficient to put a reasonably prudent man upon inquiry, the pursuit of which would have led to actual knowledge.' [Citation.]" (*City of Pleasanton v. Board of Administration, supra,* 211 Cal.App.4th at p. 544.) Contrary to Soto's brief on appeal, the $25,000 limit had nothing to do with the particular assistant district attorney handling the case. As we have explained, *ante*, the statutory scheme makes a plain distinction between judicial and nonjudicial forfeiture proceedings, with the jurisdictional cut-off being $25,000. Moreover, whether the forfeiture proceeding originates as nonjudicial, a claim has to be filed in order for an interested party to contest the forfeiture. Soto's attorney should have been able to learn all this regardless of what the unnamed deputy district attorney told him.

16

In addition, the prosecutor's office had no statutory power to handle Soto's forfeiture proceeding in a way that contravened section 11488.4. "To be sure, ' "[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it." ' [Citation.] This general principle, however, has two important qualifications. . . . The second qualification is the rule that estoppel cannot expand a public agency's powers. Thus, principles of estoppel are not invoked to contravene statutes and constitutional provisions that define an agency's powers. [Citations.]" (*Fleice v. Chualar Union Elementary School Dist., supra,* 206 Cal.App.3d at p. 893; see also *Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1065-1066, 1067 [equitable estoppel could not remedy failure to comply with Tort Claims Act because "deputy attorney general had no special relationship with Vanessa or her attorneys other than as an opposing party in the litigation, and so the State's attorney had no affirmative obligation to remind Vanessa to comply with the Act," and "Vanessa's attorneys were not entitled to rely on the deputy attorneys general to inform them of the law"].)

We conclude the People are not estopped from enforcing the default judgment.

### DISPOSITION

The order is affirmed. The parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.                                    ALDRICH, J.

17